[No. G043068. Fourth Dist., Div. Three. Oct. 15, 2010.]

AKBAR BAHARIAN-MEHR, Plaintiff and Respondent, v.
E. GLENN SMITH, Defendant and Appellant.

266

Counsel

Law Offices of David J. Harter and David J. Harter for Defendant and Appellant.

Bruce W. Wagner for Plaintiff and Respondent.

Opinion

**MOORE, J.**—This is a dispute between partners in an adult entertainment business. After finding accounting irregularities, plaintiff Akbar Baharian-Mehr sued the corporation which operated the business and his partners E. Glenn Smith (Smith), Leroy Smith (Leroy) and Theron Smith (Theron).[1] Smith then filed a special motion to strike under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2] (Subsequent statutory references are to the Code of Civil Procedure.) The trial court denied the motion, and Smith appeals. As we discuss below, the motion was properly denied because the complaint did not arise from any protected activity on Smith's part, but from a business dispute between the parties, and the mention of any protected activity was merely incidental. We therefore affirm the trial court's order denying the motion. We also affirm the $1,500 attorney fee award against Smith and order Smith to pay Baharian-Mehr's attorney fees and costs on appeal.

I

FACTS

According to the complaint, in November 2001, Baharian-Mehr and Leroy signed a general partnership contract to establish an adult entertainment business. Baharian-Mehr's responsibilities under the contract included finding a location and performing the necessary work at the site to open the business, as well as obtaining the necessary permits and licenses, in exchange for 15 percent of ownership and profits. Leroy's responsibility was mostly to provide the funds needed to open the business, in return for 85 percent of the business and its profits. Under the agreement, each party was a fiduciary of

---

[1] Because several family members with a shared surname are involved in this case, we refer to some of them by their first names. No disrespect is intended. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475–476, fn. 1 [274 Cal.Rptr. 911].)

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

the other, and Leroy was responsible for keeping accurate accounting records and making those available to Baharian-Mehr at his request. Profit accounting was to be completed monthly.

Shortly thereafter, an addendum to the partnership contract was executed, under which Smith, Leroy's brother, was permitted to enter the partnership and share in Leroy's ownership and profits in exchange for funding.

A potential location was eventually found in Pico Rivera, and a lawsuit was thereafter filed in federal district court to challenge Pico Rivera's zoning scheme. A preliminary injunction was granted, and the site underwent some renovations. A certificate of occupancy was issued in July 2002.

During the renovations and pursuant to the partnership agreement, a corporation known as SGRL Investments, Inc. (SGRL), was formed to conduct the business. SGRL's shareholders were Smith and Leroy, as well as Theron, another family member. Each was named as a corporate officer. SGRL adopted the partnership agreement and addendum.

The federal court litigation over Pico Rivera's zoning scheme continued. According to the complaint, the district court twice ruled that both the original and revised zoning plans were unconstitutional. Eventually, SGRL and Pico Rivera entered into a consent decree, with Pico Rivera agreeing to drop its pending appeal and waive the application of certain standards in its current ordinance, and SGRL agreeing to close its business by September 1, 2009.

According to the complaint, Leroy managed the business from 2002 until September 2007, at which time he quit. During that period, Baharian-Mehr did not inspect the accounting records. After Leroy departed, Baharian-Mehr alleged that he was given access to only a portion of the accounting records, which were "a mess." He claimed to have found errors, including one for $100,000. Thereafter, Baharian-Mehr sent a formal request to inspect the records, which he alleged was ignored.

Eventually, Baharian-Mehr inspected some of the records, and found what he believed to be mismanagement and wrongful expenditures of corporate funds. These included, in part: funds paid to a private investigator to watch former employees who had sued SGRL for wage and hour violations; continued payment of his manager's salary to Leroy after he quit; thereafter hiring as manager Leroy's son Matthew, who failed to deposit receipts in SGRL's corporate bank account; use of a corporate credit card and cash for nonbusiness expenses; failure to properly pay employees all wages and overtime due, resulting in litigation; hiring political consultants unnecessarily

for Smith's personal gain; paying Smith's personal attorney; and directing SGRL's accounting records to incorrectly reflect capital investments as loans.

Between September 2007 and April 2008, Baharian-Mehr met with Smith on numerous occasions to try to resolve some of these issues. In February 2009, Smith was elected as new president of SGRL and thereafter "had a complaint filed naming SGRL as plaintiff against defendant [Leroy], followed by a cross-complaint, all leading to the further depletion of SGRL monies for attorney fees and costs . . . ."

In June 2009, Baharian-Mehr filed suit against SGRL, Leroy, Theron, and Smith. As pertinent here, his claims included causes of action for accounting, preliminary and permanent injunctions, breach of fiduciary duty, constructive fraud, constructive trust, and declaratory relief.

Smith filed a special motion to strike the causes of action listed above,[3] arguing that they arose from constitutionally protected activity. The court denied the motion, finding that "the gravamen of this case is a business dispute between owners and not activity protected by . . . the anti-SLAPP statute." The court also found that the motion to strike was frivolous, "in that there was no reasonable basis for the moving party to assert that . . . the gravamen of this case arose from [protected] activity . . . ." The court therefore ordered Smith to pay $1,500 in attorney fees to Baharian-Mehr.

## II

## DISCUSSION

*Jurisdiction and Standard of Review*

An order denying a special motion to strike is subject to immediate appeal. (§ 425.16, subd. (j)(1).) We exercise independent judgment to determine whether the motion to strike should have been granted. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

*Section 425.16*

A SLAPP suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53,

---

[3] The complaint included three other causes of action, which were not subject to Smith's motion.

68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685].) In response to the threat such lawsuits posed to the important public policy of open and free participation in the democratic process, the Legislature adopted section 425.16: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court, supra*, 27 Cal.App.4th at p. 815, fn. 2.)

The statute provides that an " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Resolution of an anti-SLAPP motion 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche, supra*, 31 Cal.4th at p. 733.)

Conversely, if the defendant does not demonstrate this initial prong, the court should deny the anti-SLAPP motion and need not address the second step. (*City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1594 [66 Cal.Rptr.3d 862].) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and*

lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).)

*Protected Activity*

■ First we decide whether the challenged claims arise from acts in furtherance of the defendant's right of free speech or right of petition under one of the four categories set forth in section 425.16, subdivision (e). (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58].) In doing so, we "examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies . . . ." (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519–520 [37 Cal.Rptr.3d 381].)

"We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 [99 Cal.Rptr.3d 805].) We keep in mind that "[i]n the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier, supra*, 29 Cal.4th at p. 89.) If the mention of protected activity is "only incidental to a cause of action based essentially on nonprotected activity," then the anti-SLAPP statute does not apply. (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414 [9 Cal.Rptr.3d 242].)

Smith's initial motion cherry-picked four allegations from the many in the complaint and argued that Baharian-Mehr had asserted that these activities caused him damage. These activities related to hiring attorneys and a private investigator in connection with wage and hour litigation, and the subsequent complaint that SGRL filed against Leroy. The rest of the many allegations claiming mismanagement and breach of fiduciary duty were ignored.

In *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790 [63 Cal.Rptr.3d 575], the court considered allegations of breach of contract and fraud in the context of an anti-SLAPP motion. The plaintiffs sold a portion of their land to defendant Wal-Mart, but contrary to the plaintiffs' understanding of the deal, Wal-Mart did not relocate an access road that the plaintiffs needed to retain. Instead, Wal-Mart obtained a city resolution that vacated the road and replaced it with emergency access and an alley. The plaintiffs sued Wal-Mart, which filed an anti-SLAPP motion on the grounds

that the allegations in the complaint arose from protected petitioning activity, specifically, seeking and obtaining development permits. The appellate court overturned the trial court's ruling that the complaint arose from protected activity, holding that anti-SLAPP protections did not apply, and the protected activity was merely incidental or collateral to the unprotected activity alleged in the complaint. (*Id.* at p. 802.) The "overall thrust" of the complaint challenged the manner in which Wal-Mart dealt with the plaintiffs, and the pursuit of governmental permits and approvals was collateral to those private dealings. (*Id.* at p. 809.)

■ The allegations relating to legal proceedings in this case are similar. Baharian-Mehr's allegations relating to the hiring of attorneys and filing a lawsuit against Leroy do not constitute the "overall thrust" of the complaint, which relates to mismanagement and misuse of corporate funds. The payment of attorneys and hiring of a private investigator constitute only a few of many examples of such mismanagement. The list of specific alleged misuses of corporate funds, for example, constitutes almost two pages of the complaint. The gravamen of Baharian-Mehr's complaint is not that Smith's petitioning activity caused him harm, but that his wasteful and unnecessary spending on attorneys and investigators did. In this instance, the mention of protected activity is "only incidental" to a business dispute based on nonprotected activity. (*Scott v. Metabolife Internat., Inc., supra,* 115 Cal.App.4th at p. 414.) Thus, we find the court properly denied Smith's anti-SLAPP motion.

*Sanctions Award*

In its order denying Smith's motion, the trial court found that the motion to strike was frivolous, "in that there was no reasonable basis for [the] moving party to assert that . . . the gravamen of this case arose from [protected] activity . . . ." Accordingly, the court ordered Smith to pay $1,500 in attorney fees to Baharian-Mehr.[4]

Under section 425.16, subdivision (c)(1), "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Under subdivision (a) of section 128.5, "Every trial court may order a party, the party's attorney, or

---

[4] We presume this was indeed intended as an attorney fee award. In his opposition in the trial court, Baharian-Mehr specifically requested attorney fees of $2,400, pursuant to the statute. The court's tentative motion referred to "sanctions" and this language was apparently carried over into oral argument and the court's final order. Both parties refer to the order as one for attorney fees in their briefs, and we treat it as such.

both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

Baharian-Mehr argues that we should not review the attorney fee award except upon review from a final judgment. Section 425.16, subdivision (i), states: "An order granting or denying a special motion to strike shall be appealable under Section 904.1." Baharian-Mehr cites *Doe v. Luster* (2006) 145 Cal.App.4th 139 [51 Cal.Rptr.3d 403] (*Doe*), and argues that this provision does not encompass attorney fee awards on anti-SLAPP motions. In that case, the defendant's anti-SLAPP motion was denied, and the plaintiff subsequently filed a separate motion seeking attorney fees. The trial court declined to award attorney fees, finding that while unsuccessful, the motion was not frivolous, and the plaintiff appealed. (*Id.* at pp. 142–143.) The appellate court dismissed the appeal, holding that the right to immediately appeal the court's decision to grant or deny an anti-SLAPP motion did not include the right to appeal an order that denied attorney fees.[5]

In dicta, the *Doe* court opined that prior cases which reviewed both the motion itself and the grant or denial of an attorney fee award should not have done so. (*Doe, supra*, 145 Cal.App.4th at p. 150.) While we agree with the holding in *Doe* that a separate attorney fee order should not be heard on interlocutory appeal, we must disagree with its dicta.

In *Moore v. Shaw* (2004) 116 Cal.App.4th 182 [10 Cal.Rptr.3d 154] (*Moore*), the defendants appealed the denial of their anti-SLAPP motion, and the plaintiff cross-appealed the denial of his request for attorney fees. (*Id.* at p. 186.) The appellate court affirmed the denial of the motion and reversed the trial court's decision not to award fees, finding the request should have been granted. The appeal of the attorney fee award was part and parcel of the appeal on the anti-SLAPP motion itself. Not only was the decision part of the same order, but evaluating the trial court's decision on the attorney fee motion required a thorough review of the merits of the motion. Addressing the merits of the motion at an early stage of the case while leaving the attorney fee issue for some date far in the future artificially separates two intertwined issues. Further, it potentially constitutes a waste of judicial resources, if, at that far later date, the only issue left to be decided is attorney fees on the long-ago anti-SLAPP motion.

---

[5] The court noted that any attorney fee order exceeding $5,000 is immediately appealable, pursuant to section 904.1, subdivision (a)(12). (*Doe, supra*, 145 Cal.App.4th at p. 146.) Given that many (if not most) attorney fee awards on a fairly complex motion exceed this amount, jurisdiction to hear the attorney fee award will not be an issue in most cases.

■ We concur with the *Doe* court that "The fundamental purpose of statutory construction is 'to ascertain and effectuate legislative intent.' " (*Doe, supra,* 145 Cal.App.4th at p. 146.) But the language of a statute should not be given a literal meaning if such a reading would result in absurd consequences the Legislature never contemplated. (*Catholic Mutual Relief Society v. Superior Court* (2007) 42 Cal.4th 358, 373 [64 Cal.Rptr.3d 434, 165 P.3d 154].) ■ In cases where, as here, the issue of whether the anti-SLAPP motion should have been granted is properly before the appellate court, it would be absurd to defer the issue of attorney fees until a future date, resulting in the probable waste of judicial resources. When the first issue is properly raised, appellate jurisdiction over both issues under section 425.16, subdivision (i) is proper.

As to the merits of the attorney fee award itself, Smith's argument that the award constituted an abuse of discretion must fail. He argues that the trial court failed to make the proper factual findings in its order to justify a finding that his motion was frivolous. Smith, however, has waived this argument by failing to object to the order in the trial court. (*Andrus v. Estrada* (1995) 39 Cal.App.4th 1030, 1043 [46 Cal.Rptr.2d 300].)

■ Further, our review of the motion supports the trial court's decision, and we find no abuse of discretion in the attorney fee award. This is one of the weakest anti-SLAPP motions this court has reviewed in some time, which is not an inconsiderable achievement. The legal test for a frivolous motion is whether the " 'motion is "totally and completely without merit" (§ 128.5, subd. (b)(2)), that is, *"any reasonable attorney would agree such motion is totally devoid of merit."* [Citation.]' [Citation.]" (*Moore, supra,* 116 Cal.App.4th at p. 199.) ■ Given the continuous flow of unambiguous case law in the past decade, any reasonable attorney should be aware that a business dispute that simply mentions incidental protected activity is not subject to the anti-SLAPP statute. Additionally, Smith's motion in the trial court was particularly weak. A total of six pages, it simply quoted a few of the complaint's allegations out of context and asserted the complaint was subject to the anti-SLAPP statute in an entirely conclusory manner. Smith's motion was indeed frivolous, and the trial court did not abuse its discretion by granting Baharian-Mehr's attorney fee request.

■ Baharian-Mehr also requests attorney fees on appeal. Such fees are recoverable under the statute. (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499 [45 Cal.Rptr.2d 624].) Although Smith's briefing is an improvement over his original motion in the trial court, his legal arguments are equally devoid of merit, and therefore, attorney fees are appropriate.

## III

## DISPOSITION

The order is affirmed. Baharian-Mehr is entitled to his costs, including attorney fees, on appeal. The proper amount of fees and costs shall be determined by the trial court.

O'Leary, Acting P. J., and Ikola, J., concurred.