Filed 3/24/15  Reid v. Rosenberg CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIGETTE REID,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHERYL ROSENBERG,<br><br>    Defendant and Appellant. | B252319<br><br>(Los Angeles County<br>Super. Ct. No. BC512275) |

        APPEAL from an order of the Superior Court of Los Angeles County,
Richard Fruin, Judge.  Affirmed.

        Arent Fox, Richard Charnley, R.C. Harlan; Gordon & Rees, Debra Ellwood
Meppen, Gary J. Lorch, Connie K. Chang; Tuchman & Associates, Aviv L. Tuchman and
Loren N. Cohen for Defendant and Appellant.

        Loeb & Loeb, David Grossman and Ramon Ramirez for Plaintiff and Respondent.

Brigette Reid and Sheryl Rosenberg are sisters and are allegedly members of SD SHERYL BRIGETTE, LLC (SDSB, or the Company). Reid brought a lawsuit against Rosenberg arising from Rosenberg's mismanagement of SDSB, which included an allegation that Rosenberg had unilaterally seized control of SDSB and used the Company's assets for her personal gain. One of these assets is commercial property located at 1775 Ximeno Avenue, Long Beach, California, and 4500 E. Atherton Street, Long Beach, California (hereafter, the Long Beach Property). The Long Beach Property was transferred to SDSB by their late father, Stanley Diller. A dispute arose as to the ownership of the Long Beach Property in a probate proceeding involving Diller's estate as it appeared Diller had transferred the Long Beach Property from SDSB back to his estate. Rosenberg filed a petition in the probate proceeding to sell the Long Beach Property and to use the sale proceeds to pay taxes owed by the Diller estate. Reid's lawsuit against Rosenberg alleged that such a sale breached Rosenberg's fiduciary duty owed to the members of SDSB as it would disproportionately benefit Rosenberg and her children, beneficiaries of the Diller estate.

In response to Reid's lawsuit, pursuant to the provisions of California's anti-strategic lawsuit against public participation (anti-SLAPP) statute (Code Civ. Proc., § 425.16),[1] Rosenberg filed a special motion to strike Reid's first amended complaint on the ground that the gravamen of the complaint arose out of Rosenberg's petitioning activity in the probate proceeding. The trial court denied the special motion to strike, concluding the anti-SLAPP statute did not apply because Rosenberg's alleged wrongdoing was a business dispute arising from her exercise of sole dominion and control over a jointly-owned limited liability company, and not protected activity. Upon our de novo review, we conclude the anti-SLAPP statute does not apply to this business dispute. Accordingly, we affirm.

---

[1] All further unspecified code sections refer to the Code of Civil Procedure.

2

FACTUAL AND PROCEDURAL BACKGROUND

1. *Formation of SDSB, Assignment to Rosenberg and Reid*

Diller formed SDSB on August 19, 2011 when he filed the Articles of Organization with the California Secretary of State. On August 23, 2011, Diller executed an Assignment, assigning and transferring his "separate shares of all of [his] rights, title and interest in [SDSB], including its membership interest," equally between Rosenberg and her children (50 percent), and Reid and her children (50 percent). One of the three assets SDSB held was the Long Beach Property.

The Assignment indicated that it was "[s]ubject to the terms and conditions of the Operating Agreement" of SDSB. An Operating Agreement "[a]s of August 23, 2011" was executed by Rosenberg in her capacity as managing member, member, and chief executive officer. Diller did not execute the Operating Agreement. Contrary to the Assignment, the Operating Agreement identified Rosenberg as SDSB's managing member and member with a "100%" interest.

On December 9, 2011, Rosenberg filed a Statement of Information with the California Secretary of State indicating that she and Reid were both members of SDSB. Eighteen days later, she filed the same document, indicating that she was the only member of SDSB. Rosenberg has, at various times, taken different and inconsistent positions as to whether Reid has any membership interest in SDSB, and even if she had an interest, Rosenberg maintained that Reid had no right to participate in the management and control of SDSB as Reid only has an "economic interest" in SDSB.

SDSB assets were revenue-generating properties, but Reid did not receive any distributions of SDSB's profits in either January or February 2012. In March 2012, Rosenberg provided a handwritten note to Reid that accounted for the revenue of one asset, and indicated that SDSB paid almost half of that revenue in legal fees in connection with two of the SDSB properties. Rosenberg made a distribution of $20,000, "giving you [Reid] $10,000 and myself $10,000 and leaving around $8,000 in the account." Reid did not receive a distribution from SDSB in April 2012.

3

In May 2012, Reid received a distribution from SDSB after her counsel sent a letter to Rosenberg's counsel demanding full share of the profits.  At this point, Reid's counsel also objected to Rosenberg's exclusive management and control of SDSB, and requested an accounting and inspection of SDSB's books and records.

From May 2012 through December 2012, Rosenberg allegedly made monthly joint and equal distributions of SDSB's profits to her and Reid.

From January 2013 to June 2013, Reid received a monthly distribution from SDSB.  Reid continued to request, but was never granted, access to SDSB's books and records.

2. *The Probate Proceeding (Rosenberg's Petition to Sell the Long Beach Property)*

Diller died on January 4, 2012, several months after he executed the Assignment of his interest in SDSB to his daughters.  Following Diller's death, City National Bank (CNB) became the successor trustee of the Stanley Diller Living Trust (the Diller Trust).  A dispute arose as to the title to property Diller transferred into SDSB before his death, which included the Long Beach Property, because the Diller Trust did not have sufficient assets to pay creditors, including the federal and state tax authorities.

a. *CNB's Petition*

On April 4, 2013, CNB filed a petition to determine title to property in a probate case pending before the Los Angeles Superior Court entitled *In re: Stanley Diller Living Trust* (Super. Ct. L.A. County, 2012, No. BP140257).  The petition alleged that Diller made several transfers of assets during the last nine months of his life.  The allegations in the petition concerning the transfer of the Long Beach Property state:  "The Trust owned certain real property located at 1775 Ximeno Avenue, Long Beach, California . . . .  By deed dated August 23, 2011, and recorded August 24, 2011, Mr. Diller, as Trustee of the Trust, transferred his interest in the Long Beach Property to SD Sheryl Brigette.  However, by deed dated September 23, 2011 (the 'September Deed'), SD Sheryl Brigette granted the Long Beach Property back to Mr. Diller as Trustee of the Trust.  The September Deed was signed by Diller as 'Manager.'  However, as is set forth in the next

4

paragraph, on August 23, 2011, Mr. Diller had assigned his entire interest in SD Sheryl Brigette and [Rosenberg] had accepted the assignment as Manager. Therefore Mr. Diller's authority to execute the September Deed that reconveyed the Long Beach property to the Trust is unclear."

        b. *Rosenberg's Petition to Sell the Long Beach Property*

On May 1, 2013, Rosenberg, in her role as managing member of SDSB, filed a petition in the probate proceeding (case No. BP140257), seeking an order to sell the Long Beach property.[2] The petition alleged that a court order was necessary because Diller executed and recorded a grant deed on September 23, 2011 conveying the Long Beach Property from SDSB to the Diller Trust, and that CNB had the exclusive right to sell the Long Beach Property. Rosenberg, as "managing member of SDSB and a beneficiary of the Diller Trust" stated she was in favor of the prompt sale because such a sale was consistent with Diller's intent, the proceeds could be used to satisfy a promissory note due on the Long Beach Property, and the "net proceeds from the sale would be available to pay estate and income taxes that were due or coming due respecting Stanley Diller and the Diller Trust."

On June 2013, the probate court permitted SDSB to sell the Long Beach Property. The order, by stipulation of the parties, states that CNB will execute a Quitclaim Deed to the Long Beach Property, and will execute assignments of related lease(s) and bill of sale of any personal property/fixtures on the Long Beach Property to SDSB to sell the Long Beach Property. The Quitclaim Deed, assignments, and bill of sale would be deposited into a third-party escrow for the sale of the Long Beach Property. Upon the sale of the

---

**2**      We granted Reid's request for judicial notice of court records in a case entitled *Reid v. Rosenberg* (Super. Ct. L.A. County, 2014, No. BC512275) in which documents indicated Rosenberg was seeking to sell the Long Beach Property in October 2012 to satisfy Diller's estate tax liability.

Long Beach Property, the sale proceeds would be deposited into a blocked account in the joint names of SDSB and the Diller Trust.**³**

3. *This Case (Reid's Lawsuit Against Rosenberg for Breach of Fiduciary Duty)*

On June 17, 2013, days after the stipulated order permitting the sale of the Long Beach Property, Reid filed this action against Rosenberg. Reid's position is the Long Beach Property remains an SDSB asset, which Rosenberg had no authority to sell as the manager of SDSB for the purpose of using the sale proceeds to pay a debt not owed by SDSB that would disproportionately benefit Rosenberg as a beneficiary of the Diller estate.

a. *First Amended Complaint Alleging Unlawful Control of SDSB*

The first amended complaint alleges causes of action for breach of fiduciary duty, declaratory relief, and an accounting based upon Rosenberg's exclusive and unilateral control of SDSB. It is alleged that Rosenberg seized unilateral control of SDSB and has refused to recognize Reid's membership interest. Rosenberg allegedly breached her fiduciary duty by creating and executing the Operating Agreement to appoint herself as SDSB's sole manager, and thereafter (1) seized unilateral control of the business, (2) refused Reid her rightful share of profits, (3) prohibited access to books and records, (4) used the profits for her own personal gain, and (5) failed to provide a formal accounting of SDSB's funds. The declaratory relief cause of action alleges an actual controversy has arisen concerning the rights, duties, and obligations with respect to the ownership and management of SDSB and with respect to the validity of the Operating Agreement.

---

**³** We granted Rosenberg's request for judicial notice of court records in case No. BP140257, which include a petition for an order for release of funds from the blocked account, and objections to the petition filed by Reid and CNB. These court records are not relevant to the issues raised in this appeal.

b. *Allegations Giving Rise to the Special Motion to Strike (Paragraph 17)*

Rosenberg's special motion to strike specifically focuses on paragraph 17 of the general allegations in the first amended complaint regarding the sale of the Long Beach Property. These allegations are incorporated by reference into all three causes of action.

Under the heading, "Rosenberg has unlawfully seized unilateral control of SDSB's assets" (capitalization omitted), paragraph 17 alleges: "There were three primary assets transferred by Mr. Diller to SDSB. The first consists of real estate located at 1775 Ximeno Avenue, Long Beach, California 90815 and 4500 E. Atherton Street, Long Beach California 90815 (the 'Long Beach Property'). Rosenberg has been in the process of attempting to sell the Long Beach Property for some time. Plaintiff has repeatedly demanded that she be included and involved with all communications and activities with respect to Rosenberg's attempt to sell the Long Beach Property, but Rosenberg has refused to do so. Plaintiff is informed and believes that Rosenberg, without Plaintiff's consent or authorization, intends to use Plaintiff's 50% portion of the proceeds from the sale of the Long Beach Property in order to pay taxes and expenses for which SDSB is not responsible and which may disproportionately benefit Rosenberg and her children."

c. *Rosenberg's Special Motion to Strike is Denied*

Rosenberg asserted that the causes of action alleged in the first amended complaint were inextricably intertwined with her petitioning activity in the probate proceeding. Specifically, Rosenberg maintained that the allegations in paragraph 17 show that this lawsuit was prompted by Rosenberg's (and SDSB's) petition to sell the Long Beach Property.

The trial court denied the special motion to strike. The court concluded that Rosenberg did not demonstrate the allegations in the first amended complaint challenged conduct that was in furtherance of her petitioning activity. Instead, the court characterized this lawsuit as a "business (or property) dispute between the parties." The court reasoned that just because "some of the plaintiff's [Reid's] allegations against defendant [Rosenberg] may also have been placed at issue in petitions filed by defendant

7

and CNB in the Probate Court does not convert a business (or property) dispute into protected petition conduct. Plaintiff's allegations and the Probate petitions can describe the same conduct without triggering section 425.16. That is particularly true if the underlying dispute, as here, began before the filing of any court action. Where the court action is merely an expression of the underlying business (or property) dispute, the filing of the court action does not create petition or free speech rights that are protected under section 425.16. See generally *Kajima Engineering and Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921."

Rosenberg filed a timely notice of appeal.

DISCUSSION

1. *Anti-SLAPP Statute and Standard of Review*

Section 425.16, "commonly referred to as the anti-SLAPP statute," provides "for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of constitutional rights of freedom of speech and petition for the redress of grievances." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 312, 315.) The Legislature authorized the filing of a special motion to strike such claims (§ 425.16, subds. (b)(1), (f)), and expressly provided that section 425.16 should "be construed broadly." (§ 425.16, subd. (a); see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119-1121.) "Such a motion requires a two-step process. First, the defendant must make a prima facie showing that the 'cause[s] of action . . . aris[e] from' the defendant's actions 'in furtherance of that [defendant's] right of . . . free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the plaintiff must establish 'a probability that the plaintiff will prevail on the claim[s].' [Citation.]" (*Club Members for an Honest Election v. Sierra Club*, at pp. 315-316.)

As to the first step, section 425.16, subdivision (e) specifies the type of activity protected by the anti-SLAPP statute. An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection

8

with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. . . ." (§ 425.16, subd. (e).) Based upon these provisions, " 'statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest.' " (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1261.)

In the anti-SLAPP statute, "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) To determine whether the causes of action as alleged in the first amended complaint arise from protected activity, we "examine the *principal thrust or gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies. . . ." (See *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520.) We identify " '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim[s]' " asserted in the lawsuit. (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

Where a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 " 'unless the protected conduct is "merely incidental" to the unprotected conduct.' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672; see also *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551 (*Haight Ashbury Free Clinics*).)

9

We review the trial court's ruling on an anti-SLAPP motion independently, applying the de novo standard of review to the legal principles set forth in this section. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles*, *supra*, 95 Cal.App.4th at p. 929.)

2. *The Causes of Action Alleged in Reid's First Amended Complaint are not Based Upon Rosenberg's Petitioning Activity*

Although Rosenberg presents seven separate issues for our review, the dispositive issue in this appeal is whether the gravamen or principal thrust of the causes of action alleged in the first amended complaint arise from Rosenberg's petitioning activity in the probate proceeding (case No. BP140257). Rosenberg contends that the breach of fiduciary duty cause of action alleged in the first amended complaint is based upon her "seeking to have the Probate court apply the net sale proceeds of the Long Beach property to the Diller estate taxes." According to Rosenberg, the alleged wrongdoing in the first amended complaint mirrors the relief sought in the petition that she filed in the probate proceeding. It does not. Reid's lawsuit is a business dispute over the management and control of SDSB.

"[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. ([Citation.] ['[t]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding'].) . . . [I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.)

The gravamen or principal thrust of Reid's lawsuit is that Rosenberg unlawfully and unilaterally seized control of SDSB. The dispute arose as early as August 2011,

10

when Rosenberg executed the Operating Agreement, long before the petition was filed in the probate proceeding. Rosenberg's decision to sell the Long Beach Property to pay the taxes owed by the Diller estate occurred before she filed the petition and is illustrative of her exclusive control of SDSB. The unilateral decision to sell an SDSB asset constitutes the breach of fiduciary duty Rosenberg owed to Reid as a member of SDSB, not the filing of the petition seeking permission to sell that asset.

Rosenberg counters that her petition sought "a judicial determination that [Rosenberg], in her capacity as sole managing member of SDSB, was authorized to sell the LB Property and that the proceeds of the sale could be used to pay for certain estate tax obligations of Mr. Diller's Estate and Trust." The petition requests no such judicial determination of Rosenberg's authority, and the order permitting the sale based upon the parties' stipulation does not address this issue.

*Episcopal Church Cases* (2009) 45 Cal.4th 467 is instructive. The California Supreme Court held that a dispute concerning property ownership cannot be transformed into a SLAPP suit even though protected activity "arguably lurks in the background of this case." (*Id*. at p. 473.) A dispute arose concerning ownership of a building used by the local church for worship after the local church disaffiliated from the general church because of doctrinal differences. (*Id*. at pp. 474-476.) In the ensuing litigation, both sides claimed ownership of the local church building and property on which it stands. (*Id*. at p. 476.) The California Supreme Court rejected the argument that the lawsuit arose from the local church's protected activity of expressing its disagreement with and disaffilliation from the general church. (*Id*. at p. 477.) The court noted that the complaint alleged factors concerning the reasons the defendants decided to disaffiliate with the church, but quoted with approval the reasoning of the Court of Appeal rejecting the contention that the complaint arose from protected activity: " 'The flaw in this thinking is that it confuses the *motivation for disaffiliation* with the claims made by the general church about the *use of church property*. [¶] . . . [I]t makes no difference *why* defendants are disaffiliating; the point is they are being sued for asserting *control over the local*

11

*parish property* to the exclusion of a *right to control asserted by plaintiffs*.' " (*Id*. at p. 477.) Thus, the "additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit." (*Id*. at p. 478.)

In filing this action, Reid sought to resolve a business dispute over the ownership, management, and control of SDSB. The dispute began in 2011, shortly after her late father assigned his interest in SDSB to his daughters. Rosenberg and Reid have disagreed as to the nature of Reid's interest, and Rosenberg's authority to exclusively manage and control SDSB ever since. The filing of the petition on behalf of SDSB to sell the Long Beach Property demonstrated Rosenberg's unilateral control. The protected activity, as it did in the *Episcopal Church Cases*, lurks in the background of this business dispute. (See also *Moriarty v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125, 138-140 [anti-SLAPP statute did not apply because tenant's lawsuit alleging breach of warranty of habitability was not based upon landlords' unlawful detainer action]; *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 794, 808-811 [anti-SLAPP statute did not apply to claims by sellers of real property against buyer and others because the causes of action were factually based on allegations about the manner in which the private transactions were conducted and the government permit applications were merely incidental to the principal purposes of those transactions]; *Kajima Engineering & Construction, Inc. v. City of Los Angeles*, *supra*, 95 Cal.App.4th at pp. 929-932 [anti-SLAPP statute did not apply to an amended cross-complaint filed in response to litigation because the allegations related to bidding and contracting practices, not acts in furtherance of Kajima's right of petition through the filing of the underlying complaint against the City of Los Angeles].)

The principal thrust or gravamen of the causes of action in Reid's first amended complaint, and more specifically the allegations in paragraph 17, also are distinguishable from the allegations of protected activity in *Haight Ashbury Free Clinics*, *supra*, 184 Cal.App.4th 1539, a case Rosenberg cites. In *Haight Ashbury Free Clinics*, the

plaintiff nonprofit corporation alleged that its founder breached fiduciary duties by committing numerous acts, two of which were the subject of the motion to strike: (1) conspiring to give false testimony in depositions in ongoing litigation concerning the corporation's interest in a partnership, and (2) misrepresenting facts surrounding the litigation to a local newspaper. (*Id*. at p. 1545.) The court held the anti-SLAPP statute applied to these two acts because they were protected activity as they were made in connection with an issue under consideration by a judicial body. (*Id*. at pp. 1548-1550.) The court acknowledged that most of the specific acts (16 total) alleged as a basis for the plaintiff's claims constituted nonprotected activity and were not subject to the anti-SLAPP statute, but "the mere fact that there are numerically far fewer allegations of protected wrongdoing than there are allegations of nonprotected wrongdoing does not mean that the allegations of protected activity are merely *incidental* to the causes of action or the nonprotected activity." (*Id*. at p. 1553.) The two protected acts were not incidental because if separately alleged these acts purported to identify a breach of fiduciary duty and each act could have been the sole and adequate basis for liability. (*Id.* at pp. 1551-1553.)

Here, unlike the protected activity alleged in *Haight Ashbury Clinics*, paragraph 17 does not allege any conduct in connection with an issue under consideration by a judicial body. Even if we were to read "filing a petition in the probate proceeding," into the allegations in paragraph 17 concerning Rosenberg's efforts to sell the Long Beach Property, as we have previously stated, the protected activity "lurked in the background" of an ongoing business dispute over the management and control of SDSB. At most, Rosenberg's petitioning activity is merely incidental to the allegations that Rosenberg unlawfully seized control of SDSB and unilaterally determined to sell an SDSB asset to pay a tax liability not owed by SDSB that would benefit her individually to the detriment of the other member of SDSB. (See *Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1160-1162 [anti-SLAPP statute did not apply because the allegations regarding the filing of a lawsuit were only incidental to plaintiffs' claim that defendants breached their

13

fiduciary duty by putting their own interests ahead of the shareholders]; *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 272-273 [anti-SLAPP statute did not apply because the allegations relating to legal proceedings did not constitute the overall thrust of the complaint, which related to mismanagement and misuse or corporate funds].)[4]

In sum, the causes of action alleged in the first amended complaint do not allege liability arising from protected conduct under the anti-SLAPP statute. Based upon this conclusion, we need not decide whether Reid has established a probability of prevailing on the merits. Thus, the trial court properly denied the special motion to strike.

Our conclusion, however, should not be understood to suggest that the causes of action alleged in the first amended complaint are meritorious or that the special motion to strike was "frivolous." We therefore, decline Reid's request in her brief for attorney fees on appeal pursuant to section 425.16, subdivision (c)(1). We are solely concerned with the question of whether the causes of action are subject to the extraordinary remedy of expedited disposition by bringing a special motion to strike. We conclude the anti-SLAPP statute does not apply and affirm the order denying the special motion to strike.

---

[4] Rosenberg's attempt to distinguish *Baharian-Mehr v. Smith*, *supra*, 189 Cal.App.4th 265, is unpersuasive. The reply argues that the "gravamen of the FAC is not mismanagement of SDSB, but a dispute as to the ownership of SDSB, which was not in dispute in *Baharian-Mehr*." Mismanagement is precisely at issue here because Rosenberg allegedly has seized unilateral control of SDSB and managed the Company for her benefit and to the detriment of Reid, the other member of SDSB.

DISPOSITION

The order denying Rosenberg's special motion to strike under section 425.16 is affirmed.  As the prevailing party, Reid is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KITCHING, Acting P. J.

LAVIN, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.