[No. B228435. Second Dist., Div. Four. July 19, 2012.]

JULIO GARCIA AGUILAR et al., Plaintiffs and Respondents, v. MARC R. GOLDSTEIN et al., Defendants and Appellants.

## Counsel

Steptoe & Johnson, Mark A. Neubauer and Rebecca Edelson for Defendants and Appellants.

Milberg, David E. Azar, Jeff S. Westerman; Greines, Martin, Stein & Richland and Kent L. Richland for Plaintiffs and Respondents.

## Opinion

**WILLHITE, J.**—Defendants and appellants Marc R. Goldstein, Lawrence Weiss, M.D., Vincent Jensen, and Terrence Pyle (collectively, defendants) appeal from an order denying their special motion to strike under Code of Civil Procedure[1] section 425.16. The trial court found that section 425.16 did not apply because the complaint did not arise from acts in furtherance of

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

defendants' right of petition or free speech. We agree, and affirm the order denying defendants' motion.

## BACKGROUND

Plaintiffs and respondents Julio Garcia Aguilar, M.D., Joanne E. Mortimer, M.D., and Michael W. Lew, M.D. (collectively, plaintiffs), are physicians and shareholders of California Cancer Specialists Medical Group, Inc., a professional corporation doing business as City of Hope Medical Group (the Group). The Group is owned by physicians who, along with other physicians and health care professionals the Group employs, provided at least 90 percent of the medical staff at City of Hope National Medical Center (the Hospital) under a professional medical service agreement (the PMSA).

For the first 20 years of the Group and the Hospital's relationship, almost all of the managerial and administrative duties relating to the Group were performed by staff employed by the Hospital. In 1999, the Group hired its own management and administrative staff. A management services organization was established—California Oncology Hematology Management Group, Inc. (the MSO), which is alleged to be wholly owned by the Group (although there is evidence that it is owned by only some of the shareholders of the Group)—to provide billing and collections services and other administrative support. Defendants Goldstein, Jensen, and Pyle are, respectively, the chief executive officer, chief operating officer, and chief financial officer of both the Group and the MSO. Defendant Weiss, who is a physician and shareholder of the Group, is president and chair of the board of directors of the Group, and is on the board of directors of the MSO.

Just over a year before the expiration of the PMSA in January 2011, the Hospital and the Group, through their representatives, began discussions regarding the continuation of their relationship after the expiration of the PMSA as well as the implementation of the newly enacted health care reform law. In December 2009, the Hospital proposed to establish a foundation that would purchase all of the assets of the Group, including the MSO and outpatient clinics owned by the Group, and would be responsible for billing and collecting the clinical revenues of the Group; the foundation would then enter into a professional services subagreement with the Group to compensate the physicians for clinical and other services. In January 2010, the Group, through its representatives, offered an alternative proposal that provided for a joint governance board and joint control and ownership of the MSO and clinics. The Hospital rejected the Group's proposal in early February 2010.

The Hospital also told the Group that it did not intend to enter into a new PMSA with the Group and that if the Group did not agree on key terms of a proposal utilizing a foundation by the end of February, the Hospital would implement a foundation without the Group.

Negotiations continued over the next two months. Although the Hospital changed its initial position and agreed to some participation by the Group in the board of the proposed foundation, the Hospital insisted on retaining ultimate control over the foundation and its operations; defendants insisted that the Group have at least coequal control, which defendants asserted was required under California law. While these negotiations were going on, the Hospital's chief medical officer, Dr. Alexandra Levine, was communicating with the Group's physicians, soliciting them to work for the proposed foundation and/or a medical services provider group she had formed. In March 2010, the Group's board of directors adopted a resolution directing all employees to stop communicating with representatives of the Hospital regarding the proposed foundation; the resolution also established a subcommittee to determine the Group's legal strategies.

By mid-April 2010, the Group's board of directors concluded that "the core issues of [the Group's] negotiating position (self-governance, long-term contract, and infrastructure)" needed to be reinforced, and it approved a motion to take legal action, authorizing the litigation subcommittee to determine the appropriate time to take that action. The litigation subcommittee made that determination, and a lawsuit was filed on May 3, 2010, on behalf of the Group against the Hospital and Dr. Levine. That lawsuit (the Hospital lawsuit) alleged that the Hospital and its agents (including Levine) were attempting to force the physicians employed by the Group to participate in an "illegal scheme" that would result in the Hospital controlling the physicians and the practice of medicine in violation of California law prohibiting the corporate practice of medicine.

Three months later, plaintiffs filed the instant class action lawsuit on behalf of themselves and all shareholders of the Group (other than the named defendants). Plaintiffs allege that Goldstein, Jensen, and Pyle (collectively, the Management defendants), who are not shareholders of the Group, have failed to disclose financial information to the shareholders, including the amount of money they receive from the Group and the MSO. They allege that the Management defendants acted in their own self-interest rather than in the interest of the shareholders by rejecting the Hospital's foundation proposal, refusing to continue to negotiate, and "entrench[ing] themselves by filing suit

against the Hospital." Plaintiffs contend that the Hospital's proposal would have benefitted the shareholders by allowing the shareholders to obtain the maximum value of their shares (through the foundation's purchase of the assets of the Group) and allowing the physicians to maintain their positions with the Hospital, but it would not have allowed defendants to keep their jobs or their power to act without full disclosure, thus presenting a conflict of interest on the part of defendants. The complaint alleges that defendants breached their fiduciary duty by failing to negotiate in good faith on the Group's behalf, failing to disclose the Group's financial information to the shareholders, and failing to take steps to maximize the amounts to be paid to and for the benefit of the shareholders.

Defendants moved to strike the complaint under section 425.16. They argued that the complaint arises out of protected activity because plaintiffs' claim is based upon the filing of and conduct in anticipation of the Hospital lawsuit, as well as negotiations involving a matter of public interest, i.e., "[t]he plight of the . . . Group and its relationship with the [Hospital]" and the prohibition of the practice of medicine by a corporation. They further argued that plaintiffs cannot establish a probability they will prevail.

In opposing the motion, plaintiffs elaborated upon the basis for their claim. First, plaintiffs noted that they had recently received information in response to a shareholder records inspection request that indicated that the MSO is not a wholly owned subsidiary of the Group, as had been represented to them by defendants. Instead, the MSO is a separate entity owned by unidentified individuals, some of whom may also be shareholders of the Group. Plaintiffs asserted that defendants' failure to disclose this fact to the shareholders of the Group (or misleading the shareholders as to ownership of the MSO) was significant because the ownership and role of the MSO was an important point of contention in the negotiations with the Hospital, and defendants had a conflict of interest in representing the Group as well as the MSO. Second, plaintiffs asserted that defendants presented to shareholders incomplete and misleading information regarding the Hospital's proposal, which led the shareholders to vote to reject the proposal. They contended that defendants continued to withhold information and misrepresent other aspects of the negotiations to obtain shareholder approval of their actions, and that defendants effectively terminated the negotiations by filing the Hospital lawsuit.

Plaintiffs explained that the basis for their single claim of breach of fiduciary duty is "the manner in which [defendants] conducted the negotiations, including failing to disclos[e] their conflicts of interest, misrepresentations and omissions of material information, gross negligence, and fail[ing] to maximize shareholder value once deciding to sell the Group." They argued that it does not arise from defendants' right to petition because (1) the

references in the complaint to the Hospital lawsuit are incidental to the gravamen of the complaint, which is that defendants breached their fiduciary duty through their conduct leading up to the termination of the negotiations and (2) defendants are not parties to the Hospital lawsuit, since it was filed on behalf of the Group, and therefore plaintiffs' claim has nothing to do with *defendants'* right to petition. Plaintiffs argued that their claim also does not arise from defendants' conduct in furtherance of their right of free speech because the conduct at issue involved private negotiations regarding a business matter rather than a debate on an issue of public interest. Therefore, plaintiffs contended that section 425.16 did not apply.[2]

The trial court agreed. The court concluded that the allegations in the complaint regarding the filing of the Hospital lawsuit were " 'merely incidental' to the allegations that Defendants scuttled the negotiations in order to retain 'control . . . believed to provide substantial undisclosed financial benefits to the Management Defendants.' " The court also rejected defendants' assertion that the conduct alleged in the complaint was conduct in anticipation of the Hospital lawsuit, finding that it was instead conduct in an attempt to reach a new contract. Finally, the court found that plaintiffs do not seek to hold defendants liable for their *speech* concerning an issue of public importance, but rather for acts such as contract negotiations and business decisions. The court noted that while the negotiations or decisions themselves might potentially have an impact on a public issue, there was no speech on that issue alleged to give rise to a breach of fiduciary duty.

Having determined that defendants failed to show that plaintiffs' cause of action arises from defendants' exercise of their right to petition or free speech, the court concluded the special motion to strike must be denied. Defendants timely filed a notice of appeal from the order denying their motion.

## DISCUSSION

Defendants contend the trial court erred by denying their special motion to strike because they established that section 425.16 applied to plaintiffs' complaint, and plaintiffs failed to establish a probability that they would prevail on their claim. We conclude that section 425.16 does not apply.

A.  *Section 425.16 and Standard of Review*

Section 425.16 (also known as the anti-SLAPP statute) was enacted "to provide a procedural remedy to dispose of lawsuits that are brought to chill

---

[2] Plaintiffs also argued that they presented evidence in opposition to the motion that establishes a probability that they will prevail on their claim.

the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) The statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff with prevail on the claim." (§ 425.16, subd. (b)(1).) It defines " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

" '[S]ection 425.16 requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' " (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [87 Cal.Rptr.3d 275, 198 P.3d 66].) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) Thus, if the defendant fails to satisfy the first step, the court need not address the second step, and must deny the special motion to strike. We review the denial of a special motion to strike de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

## B. *Plaintiffs' Claim Does Not "Arise from" Protected Activity*

In this case, defendants assert that plaintiffs' breach of fiduciary duty claim arises from defendants' filing of the Hospital lawsuit and other conduct in furtherance of their exercise of the right to petition or to free speech, because (1) the complaint specifically alleges that the filing of the lawsuit

was a breach of fiduciary duty; (2) the negotiations at issue were prelitigation communications to interested parties related to issues presented in the Hospital lawsuit; and (3) the complaint alleges that defendants were purporting to act in the interests of the physicians and patients in taking the positions they did in the negotiations and in filing the Hospital lawsuit, and therefore the conduct at issue was in furtherance of the exercise of their right of free speech in connection with an issue of public interest. We disagree.

■ " 'As courts applying the anti-SLAPP statute have recognized, the "arising from" requirement is not always easily met. [Citations.]' [Citation.] A claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs. [Citation.] Rather, the focus is on the substance of the lawsuit. '[T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]' [Citation.] In other words, ' " 'the act underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' must *itself* have been an act in furtherance of the right of petition or free speech." [Citation.]' [Citation.]" (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568–1569 [92 Cal.Rptr.3d 227] (*World Financial*).) "If the mention of protected activity is 'only incidental to a cause of action based essentially on nonprotected activity,' then the anti-SLAPP statute does not apply." (*Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 272 [117 Cal.Rptr.3d 153] (*Baharian-Mehr*).)

### 1. *Filing of the Hospital Lawsuit*

In paragraph 37 of the complaint, plaintiffs allege: "In February 2010 in the midst of negotiations between the Group and the Hospital, the Board determined that the Medical Group was for sale. While City of Hope offered to purchase the Medical Group, which is preliminarily valued, in part, at approximately $40 million or more, or approximately $200,000 or more per physician shareholder, Defendants not only refused to continue to negotiate with City of Hope, but turned around and sued the Hospital instead. By halting negotiations and effectively declining the Hospital's offer by filing suit, Defendants failed to maximize shareholder value in breach of their fiduciary duties to act in the best interests of the physician Class members." Defendants argue that this allegation (and the two other instances where the Hospital lawsuit is mentioned in the context of defendants entrenching themselves and halting negotiations) shows that plaintiffs seek to hold defendants liable for breach of fiduciary duty based in part on the filing of the Hospital lawsuit.

■ In making this argument, defendants rely upon *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539 [110

Cal.Rptr.3d 129]. In that case, the plaintiff alleged that the defendants breached their fiduciary duty by committing several specified acts, including two acts that involved the defendants' exercise of the right to petition. (*Id.* at pp. 1544–1545.) The defendants moved to strike the breach of fiduciary duty claim under section 425.16 based upon the allegations regarding those two acts. (184 Cal.App.4th at p. 1545.) The trial court denied the motion, concluding that the gravamen of the claim was that the defendants mismanaged the nonprofit corporation and engaged in self-dealings, and that the allegations regarding protected activity were incidental to the claim. (*Id.* at p. 1546.) The Court of Appeal reversed. The appellate court acknowledged that most of the specific acts alleged as the basis for the plaintiff's claim constituted nonprotected activity and therefore were not subject to the anti-SLAPP statute. But the court explained that "the mere fact that there are numerically far fewer allegations of protected wrongdoing than there are allegations of nonprotected wrongdoing does not mean that the allegations of protected activity are merely *incidental* to either the causes of action or the nonprotected activity. To the contrary, they are still acts for which [the plaintiff] asserts liability and seeks damages." (*Id.* at p. 1553.) Based upon the plaintiff's inclusion of those allegations as an independent basis for liability, the court held that section 425.16 applied.

That is not this case. What the allegations of the complaint in this case, and the evidence submitted in opposition to defendants' motion to strike, make clear is that defendants' alleged liability arises from defendants' purported failure to provide information to the shareholders that would have revealed their alleged conflict of interest, their alleged misrepresentations and/or omissions regarding the Hospital's offer, and their ending negotiations with the Hospital purportedly for their own self-interest. The complaint does not allege that defendants' filing of the Hospital lawsuit gives rise to any additional liability, but that the lawsuit evidenced defendants' termination of negotiations.

The references in this case to the Hospital lawsuit are similar to references made in *Baharian-Mehr, supra,* 189 Cal.App.4th 265, in which the plaintiff alleged that the defendant (plaintiff's partner in a business) breached his fiduciary duty by mismanaging the business and misusing corporate funds, including by hiring lawyers and a private investigator and filing a lawsuit. The appellate court affirmed the trial court's denial of the defendant's motion to strike. The court explained: "Baharian-Mehr's allegations relating to the hiring of attorneys and filing a lawsuit against [another partner] do not constitute the 'overall thrust' of the complaint, which relates to mismanagement and misuse of corporate funds. The payment of attorneys and hiring of a private investigator constitute only a few of many examples of such mismanagement. . . . The gravamen of Baharian-Mehr's complaint is not that [the defendant's] petitioning activity caused him harm, but that his wasteful and

unnecessary spending on attorneys and investigators did. In this instance, the mention of protected activity is 'only incidental' to a business dispute based on nonprotected activity." (*Id.* at p. 273.)

So it is here. The allegations regarding the filing of the Hospital lawsuit are only incidental to plaintiffs' claim that defendants breached their fiduciary duty by putting their own interests ahead of the interests of the shareholders. Thus, the trial court properly found that those allegations do not support defendants' motion to strike under section 425.16.

### 2. *Prelitigation Communications*

Defendants contend that even if the allegations regarding the Hospital lawsuit were incidental to plaintiffs' breach of fiduciary duty claim, the claim nevertheless is subject to an anti-SLAPP motion because the claim is "based on the negotiations giving rise to the [Hospital] lawsuit." They argue that "[b]ecause the negotiations were prelitigation communications to interested person[s] (e.g., directors and shareholders) related or connected to the issues presented by the [Hospital] lawsuit, they constitute protected activity under [section 425.16]."

██ There is no question that "a prelitigation statement falls within clause (1) or (2) of section 425.16, subdivision (e) if the statement ' "concern[s] the subject of the dispute" and is made "in anticipation of litigation 'contemplated in good faith and under serious consideration' " [citation].' [Citations.]" (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887 [123 Cal.Rptr.3d 736] (*Digerati*).) The difficulty here is that the statements at issue either are not statements in anticipation of litigation or are not the basis for plaintiffs' claim, and therefore are irrelevant for purposes of the anti-SLAPP statute.

It is not entirely clear from defendants' moving and reply papers filed in the trial court, or their briefs on appeal, exactly what communications defendants are referring to in making their argument. Clearly, the negotiations themselves—i.e., the communications between defendants (representing the Group) and the Hospital, attempting to reach an agreement regarding the Group providing professional services—cannot be considered protected activity. As the trial court noted, the negotiations were not conducted in contemplation of litigation, but rather in an attempt to reach a new contract. As best we can determine from defendants' appellate briefs—which state that the communications at issue were made to directors and shareholders and were related to the issues in the Hospital lawsuit—and the arguments of defendants' counsel at the hearing on the motion, it appears that defendants are asserting that their statements to the Group's shareholders, while reporting on

the negotiations, that the Hospital's proposal is illegal, constitute protected prelitigation communications that bring plaintiffs' claim within the anti-SLAPP statute.

Defendants' assertion fails for two reasons.

First, the prelitigation communication cases defendants rely upon involve statements that were made by the party bringing the anti-SLAPP motion and referred to alleged wrongdoing by the party opposing the motion, which wrongdoing was the subject of a subsequent lawsuit the moving party filed (or threatened to file) against the opposing party. (See *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255 [73 Cal.Rptr.3d 383] [letter by defendant's lawyer to plaintiff's customers that accused plaintiff, defendant's former employee, of misappropriation of trade secrets and warned customers not to do business with plaintiff, was protected activity even though letters were sent several months before defendant commenced litigation against plaintiff]; *Digerati, supra,* 194 Cal.App.4th 873 [letter by cross-defendants' lawyer to potential film distributors stating that cross-complainant film producer had not obtained cross-defendants' final approval of film under their agreement and warning distributors that they could be liable for interference with contract, was protected activity when letter was sent close to the time cross-defendants filed breach of contract lawsuit against cross-complainant]; *Fleming v. Coverstone* (S.D.Cal. 2009) 2009 WL 764887 [e-mail sent by defendant to plaintiff asserting that contract between them was not enforceable and threatening to publicly expose plaintiff's ethics violations and illegal tax scam unless plaintiff returns consideration defendant paid].) In contrast, in the present case, the statements defendants assert are at issue were made to plaintiffs about a third party's alleged wrongdoing, and they were made in the context of reports on negotiations by the negotiators to the parties they represent, rather than in the context of potential litigation against plaintiffs.

Second, even if defendants' statements about the Hospital's allegedly illegal proposal were protected as communications in anticipation of the Hospital lawsuit, there is nothing in plaintiffs' complaint or the evidence submitted in connection with the motion to strike to suggest that plaintiffs' breach of fiduciary duty claim arises from any such statements. Instead, the claim is based upon defendants' alleged failure to disclose their conflict of interest and negotiate in good faith to advance the shareholders' interests ahead of their own interests.

In short, the trial court properly concluded that defendants failed to show that plaintiffs' claim is based upon conduct in furtherance of defendants' exercise of their right to petition under the anti-SLAPP statute.

### 3.   Conduct in Furtherance of Free Speech on Public Issue

Defendants contend the conduct at issue in plaintiffs' claim is protected activity under subdivision (e)(4) of section 425.16, i.e., it was "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) They reason that a public issue—the illegality of the Hospital's proposal—"was at the heart of the negotiations which culminated in the filing of the [Hospital] lawsuit, i.e., alleged conduct on which [plaintiffs] based their breach of fiduciary duty cause of action." They explain that their "concern that the [Hospital's] proposal would result in an illegal corporate practice of medicine caused [defendants] to reject the [Hospital's] proposal and file the [Hospital] lawsuit, which is conduct about which [plaintiffs] complain." Even if we accept defendants' assertion that the negotiations between the Group and the Hospital regarding the legality of the Hospital's proposal constitute a public issue (but see *World Financial, supra,* 172 Cal.App.4th at p. 1570 [private business dispute that might implicate broad policy concerns does not make claim subject to anti-SLAPP statute]), their argument nevertheless fails.

The flaw in defendants' reasoning is that plaintiffs are not seeking to hold defendants liable for speaking about the purported illegality of the Hospital's proposals or for conduct in furtherance of their right to speak about that issue. Rather, plaintiffs allege that defendants are liable for failing to disclose their conflict of interest and for failing to advance the shareholders' interests ahead of their own interests. For purposes of the first prong of analysis under the anti-SLAPP statute, it makes no difference that defendants contend they opposed the Hospital's proposal because they believed it involved the illegal corporate practice of medicine, although ultimately that may be relevant in determining whether their conduct breached their fiduciary duties to the shareholders. (See, e.g., *Episcopal Church Cases, supra,* 45 Cal.4th at p. 477 [dispute between general church and disaffiliated parish that claimed ownership over church property does not implicate anti-SLAPP statute, even though protected activity (free exercise of religion) may explain why dispute arose].) What matters at this stage is whether defendants are being sued for exercising their right to petition or speak on an issue of public interest. The trial court properly found that they were not.

Because we conclude the trial court correctly found that defendants failed to make the threshold showing that plaintiffs' breach of fiduciary duty claim arises from protected activity, we need not determine whether plaintiffs demonstrated a probability of prevailing. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.)

## DISPOSITION

The order denying defendants' motion to strike is affirmed. Plaintiffs shall recover their costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 10, 2012, S204987.