Filed 8/26/15  Matiasic v. Brice CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PAUL MATIASIC et al.,<br><br>          Cross-complainants and<br>          Respondents,<br><br>v.<br><br>VICTOR BRICE,<br><br>          Cross-defendant and Appellant. | A142108<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-13-531173) |

Victor Brice sued Paul Matiasic and the law firm Matiasic, Roth & Johnson, LLP (collectively Matiasic) for legal malpractice and breach of fiduciary duty.  Matiasic contended that there was never an attorney-client relationship with Brice, and filed a cross-complaint for negligent misrepresentation.  Brice appeals from the trial court's order denying his special motion to strike the cross-complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[1]  The trial court determined that section 425.16 did not apply because Brice failed to show that the cross-complaint arises out of an act in furtherance of his right to petition or free speech.  We agree, and affirm.

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)  Undesignated statutory references are to the Code of Civil Procedure.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Underlying Litigation*

Brice is the pastor at Solomon's Temple Baptist Church of Pittsburg, Inc. (Temple). In October 2009, a group of 31 Temple congregation members filed a derivative action naming Temple, Temple's officers and directors, and Brice as defendants (*Robinson v. Brice* (Super. Ct. Contra Costa County, 2012, No. MSC09-02998) (*Robinson*)). The *Robinson* plaintiffs asserted claims, on Temple's behalf, against Brice and Temple's officers and directors for, among other things, breach of fiduciary duty and conversion. The *Robinson* plaintiffs also alleged Brice converted Temple's property for his personal use.

In November 2009, Temple tendered defense of the *Robinson* action to GuideOne Mutual Insurance Company (GuideOne), pursuant to an insurance policy that also provided coverage to Temple's officers and directors. On or about November 18, GuideOne referred the *Robinson* matter to Matiasic. On November 19, GuideOne accepted the tender under a reservation of rights.

On November 23, 2009, attorney Chauné Williams wrote Matiasic and informed him that she represented all of the *Robinson* defendants, including Brice. She directed Matiasic to refrain from communicating directly with her clients "until we can resolve the insureds' preliminary concerns." Williams further stated, "On November 17, 2009, I emailed [GuideOne] a letter giving notice that I represent [Temple], and its various officers, in connection with the [*Robinson*] action. . . . [¶] . . . [¶] We have received GuideOne's written acceptance of the tender of defense . . . and/or a reservation of rights letter. As I indicated to GuideOne in my November 17 letter, we anticipate that *Cumis*[3]

---

[2] We consider the facts as set forth in the pleadings and supporting and opposing affidavits. (§ 425.16, subd. (b)(2).)

[3] *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 (*Cumis*) held that an insurer is responsible to pay the reasonable cost for hiring independent counsel for the insured when the insured and insurer have divergent interests due to the insurer's reservation of its right to deny coverage. (*Id.* at pp. 361, 375.) In response to *Cumis*, our Legislature enacted Civil Code section 2860,

may apply and that the insureds may be entitled to independent counsel of choice; however, we cannot take a position in this regard until you and I have had an opportunity to discuss the potential conflict." Matiasic declares that he understood, after receiving the letter, that Williams was advising the *Robinson* defendants, including Brice, "regarding their rights with respect to *Cumis* and . . . regarding the consequences of GuideOne's response to their tender."

On December 8, 2009, Matiasic met with Brice, the other *Robinson* defendants, Williams, Williams's colleague, and two representatives of GuideOne. Williams and her colleague articulated Brice's position that conflicts of interest necessitated the appointment of independent counsel. Brice was in the room at the time. Matiasic did not offer any legal advice to Brice on the subject.

On December 23, 2009, Williams again wrote Matiasic, indicating that, under protest, Temple and its officers and directors (other than Brice) accepted Matiasic's appointment as counsel. She further wrote, "I will continue representing Brice throughout the proceedings and you are instructed not to make any direct contact with him without my permission. . . . [¶] . . . [¶] Please be advised that all of the insureds will be instituting an action against [GuideOne] and the agent that procured the insurance policy for [Temple]. Naturally, I will be representing them in that action . . . . [¶] Lastly, the federal court . . . remanded the [*Robinson*] action back to state court. . . . I assume you will make an appearance on behalf of the remaining insureds; and I will respond on [Brice's] behalf."

*The Coverage Action*

Brice, Temple, and Temple's officers and directors, represented by Williams, eventually sued GuideOne (*Solomon's Temple Baptist Church v. GuideOne Mutual Ins. Co.* (Super. Ct. Contra Costa County, 2013, No. MSC10-00819); hereafter the Coverage Action). The plaintiffs in the Coverage Action alleged, among other things, that

---

which " ' "clarifies and limits" ' " *Cumis*. (*Federal Ins. Co. v. MBL, Inc.* (2013) 219 Cal.App.4th 29, 41.)

3

GuideOne, unreasonably and without proper cause, failed and refused to provide its insureds a conflict-free defense against the derivative claims. They sought, among other things, recovery of Brice's attorney fees, as well as a declaration that GuideOne was obligated to provide *Cumis* counsel. Matiasic was not a party to the Coverage Action, nor was it alleged that his conduct caused GuideOne to deny the appointment of *Cumis* counsel.[4]

B.  *Brice's Malpractice Action*

In May 2013, Brice filed suit against Matiasic (hereafter malpractice action) and asserted the following causes of action:  (1) declaratory relief; (2) professional negligence; (3) breach of fiduciary duty; (4) interference with contractual relations; and (5) tort of another. Brice alleges, among other things, that a tripartite attorney-client relationship arose when Temple tendered defense of the *Robinson* action to GuideOne and GuideOne retained Matiasic.[5]  According to Brice, Matiasic thereafter owed fiduciary duties to GuideOne and Brice, including a duty to determine the existence of an actual or potential conflict of interest. However, Matiasic breached those duties by representing to GuideOne on November 20, 2009, he had completed a conflicts check and no conflicts of interest precluded him or his firm from jointly representing Brice, Temple and the other officers and directors in the *Robinson* action. Brice also alleges that GuideOne refused to provide independent counsel, based on Matiasic's representation that there was no conflict of interest. As a result, Brice was forced to engage independent counsel, at his own expense. Brice alleges Matiasic violated

---

[4] In a footnote in his opening brief, Brice makes a passing request for judicial notice of an order granting summary adjudication in Brice's favor in the Coverage Action. We deny the request because it is not made by separate, noticed motion. (Cal. Rules of Court, rule 8.252(a)(1) ["[t]o obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion with a proposed order"].)

[5] Brice also alleges he explicitly accepted Matiasic's representation, on December 4, 2009, and only informed Matiasic that Williams would personally represent him on December 23, 2009. Matiasic, on the other hand, declares that he never represented Brice in the *Robinson* matter.

4

Rule 3-310 of the California Rules of Professional Conduct by accepting representation of more than one client in a matter in which the clients' interests potentially conflict, without informed written consent.[6]

C.     *Matiasic's Cross-Complaint*

Matiasic answered Brice's malpractice action and filed a cross-complaint, alleging a single cause of action for negligent misrepresentation. Matiasic alleges that he justifiably relied on Brice's statements, made through Williams in November and December 2009, that Williams represented Brice, that Matiasic should "refrain from any and all substantive communication [with Brice]," that "the existence of a conflict of interest either between the *Robinson* defendants, or as a result of GuideOne's Reservation of Rights . . . was being addressed by [Williams]," and that she "was making assertions to GuideOne on Brice's behalf that that the appointment of independent . . . counsel was required." However, despite Williams's representations, "Brice filed [his malpractice action] against Matiasic for professional negligence . . . . Brice alleges, among other things, that Matiasic represented Brice in the *Robinson* matter and, therefore, owed Brice a duty to disclose and inform him of the existence of a conflict of interest . . . ."

D.     *Brice's Motion to Strike*

Brice filed a special motion to strike Matiasic's cross-complaint, pursuant to section 425.16. Brice argued that Matiasic's cross-complaint should be stricken because Williams's statements were protected by the litigation privilege (Civ. Code, § 47,

---

[6] Rule 3-310 of the State Bar Rules of Professional Conduct provides in relevant part: "(C) A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter. [¶] . . . [¶] (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

subd. (b)(2)).[7]  In his trial court reply brief, Brice argued, for the first time, that the cross-complaint arose from activity protected by section 425.16—Brice's filing the malpractice action and Williams's statements regarding *Robinson* and in anticipation of the Coverage Action.

The trial court denied the motion to strike.  The trial court reasoned:  "[Brice] has not met his burden of making a prima facie showing that the Cross-Complaint arises out of an act in furtherance of his right to petition or free speech.  ([§] 425.16.)  Brice's memorandum of points and authorities does not engage any meaningful analysis of how the Cross-Complaint arises from protected activity.  To the extent that Brice argues the Cross-Complaint arises out of statements made about his representation in the [*Robinson*] action, the determination of who was acting as his counsel does not 'relate to the substantive issues in the litigation.'  ([*Neville, supra,*] 160 Cal.App.4th [at p.] 1266.)  To the extent that Brice argues that the Cross-Complaint arises from his anticipation of the [Coverage Action] or the [malpractice action], claims that an attorney breached a fiduciary duty to a client, or otherwise violated ethical rules, are considered not to involve protected speech or petitioning activity.  (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732; see also [*United States*] *Fire Ins. Co. v. Sheppard, Mullin Richter & Hampton* [*LLP*] (2009) 171 Cal.App.4th 1617.)"  Brice filed a timely notice of appeal.

## II.    DISCUSSION

A.    *The Anti-SLAPP Statute*

The Legislature adopted the anti-SLAPP statute in 1992, finding that "it is in the public interest to encourage continued participation in matters of public significance, and . . . this participation should not be chilled through abuse of the judicial process."  (§ 425.16, subd. (a).)  Section 425.16, subdivision (b)(1) provides that "[a] cause of

---

[7] Whether Brice's or Williams's conduct is protected by the litigation privilege (Civ. Code, § 47, subd. (b)) is not determinative of the analysis under the first prong of section 425.16.  "[T]he litigation privilege and the anti-SLAPP statute are substantively different statutes that serve quite different purposes" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322) and "are not coextensive" (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1262 (*Neville*)).

action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute is to be broadly construed. (§ 425.16, subd. (a).)

"Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

We independently review an order denying an anti-SLAPP motion to strike. (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 325; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1283.) Thus, "we apply our independent judgment to determine whether [plaintiff's] causes of action arose from acts by [a defendant] in furtherance of [defendant's] right of petition or free speech in connection with a public issue." (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.) "In doing so we review primarily the complaint, but also papers filed in opposition to the motion to the extent that they might give meaning to the words in the complaint." (*Dible v. Haight Ashbury Free Clinics, Inc.* (2009) 170 Cal.App.4th 843, 849; accord, § 425.16, subd. (b)(2).) "We do not weigh the evidence; rather, we accept as true evidence favorable to plaintiff, and evaluate evidence favorable to defendant to determine whether it defeats plaintiff's claim as a matter of law." (*Neville, supra,* 160 Cal.App.4th at p. 1262.)

7

B.      *Does the Challenged Cause of Action Arise from Protected Activity under the Anti-SLAPP Statute?*

The primary question before us is whether Matiasic's negligent misrepresentation cause of action arises from an act in furtherance of Brice's constitutional right of petition or free speech, as required by section 425.16, subdivision (b)(1). Brice maintains the trial court erred in determining it does not. He asserts, "[Matiasic's] cross-complaint arises from the basic filing of [Brice's] malpractice action against Matiasic; and from communications made in connection with a coverage action contemplated in good faith and under serious consideration against GuideOne, as well as communications made in connection with the underlying [*Robinson*] action."

"[T]he 'arising from' requirement is not always easily met. [Citations.] The only means specified in section 425.16 by which a moving defendant can satisfy the requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e), defining subdivision (b)'s phrase, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 66.) Section 425.16, subdivision (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Brice argues that subdivisions (e)(1) and (e)(2) apply. We disagree.

8

1.      *Brice's Malpractice Action*

First, Brice insists that Matiasic's cross-complaint arises from Brice's filing of the malpractice action. Filing a lawsuit clearly qualifies as "petitioning" under the anti-SLAPP law. (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281; *Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 358; § 425.16, subd. (e)(1).) However, we agree with Matiasic that his cross-complaint does not "arise from" Brice's malpractice action.

"The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) "A claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs. [Citation.] Rather, the focus is on the substance of the lawsuit. . . . 'If the mention of protected activity is "only incidental to a cause of action based essentially on nonprotected activity," then the anti-SLAPP statute does not apply.' " (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1160; accord, *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414.)

"In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) The anti-SLAPP statute does not apply when protected activity is referenced as mere evidence to prove a claim arising from distinct wrongful acts. (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1284 (*Alta Loma*); *Scott v. Metabolife Internat., Inc., supra,* 115 Cal.App.4th at p. 417.) The question is whether the protected activity constitutes " '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim[s]' " asserted in the suit. (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.)

"[A]n alleged act is incidental to a claim, and incidental to any unprotected activity on which the claim is based, only if the act is not alleged to be the basis for liability." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1183.) If a cause of

action is based in part on protected activity that is not merely incidental, it arises from protected activity and should be stricken, unless the plaintiff demonstrates a probability of success on the merits. (*Salma v. Capon, supra*, 161 Cal.App.4th at p. 1288; *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1552–1553.)

Negligent misrepresentation is a form of deceit. Specifically, it is: "The assertion, as a fact, *of that which is not true*, by one who has no reasonable ground for believing it to be true." (Civ. Code, § 1710, subd. (2), italics added.) "The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 196.) "In contrast to fraud, negligent misrepresentation does not require knowledge of falsity. A defendant who makes false statements ' "honestly believing that they are true, but without reasonable ground for such belief, . . . may be liable for negligent misrepresentation . . . ." [Citations.]' [Citation.] However, a positive assertion is required; an omission or an implied assertion or representation is not sufficient." (*Apollo Capital Fund LLC v. Roth Capital Partners LLC* (2007) 158 Cal.App.4th 226, 243.)

Brice supports his argument that Matiasic's negligent misrepresentation cause of action arises from the malpractice action by citing to selected portions of the allegations of the cross-complaint—referencing his malpractice action—and omitting others. However, the key allegations of the cross-complaint provide as follows:

"18. On November 23, 2009, Brice, by and through his agent [Williams], sent correspondence to Matiasic informing Matiasic of [Williams's] representation of Brice in the *Robinson* matter and of her prior communications with GuideOne regarding the need for GuideOne to appoint independent counsel for Brice.

"19. On November 23, 2009, Brice, by and through [Williams], instructed Matiasic to direct all communications and correspondence with Brice through [Williams].

10

"20. On subsequent occasions, Brice, by and through [Williams], informed Matiasic of Brice's position that conflicts of interest were created as a result of GuideOne's reservation of rights and as between the defendants in the *Robinson* matter . . . . [¶] . . . [¶]

"22. On or about December 8, 2009, a meeting took place . . . . At that meeting, Brice, by and through [Williams] articulated the position of Brice and the other *Robinson* defendants as to the conflicts of interest that were created by GuideOne's Reservation of Rights, as well as the conflicts of interest that allegedly existed between the various defendant[s], which Brice argued necessitated GuideOne's appointment of independent . . . counsel. [¶] . . . [¶]

"24. Brice, by and through [Williams], sent correspondence to Matiasic informing Matiasic that the *Robinson* defendants, with the exception of Brice, would accept his referral as panel counsel in the *Robinson* matter. Brice, by and through his agent [Williams], affirmatively stated that [Williams] will continue representing Brice throughout the *Robinson* proceedings.

"25. *Matiasic justifiably relied on Brice's representation*, by and through [Williams], that the existence of a conflict of interest . . . was being addressed by [Williams] on behalf of Brice.

"26. *Matiasic justifiably relied on Brice's representation*, by and through [Williams], that [Williams] was making assertions to GuideOne on Brice's behalf that the appointment of independent . . . counsel was required in the *Robinson* matter.

"27. *Matiasic justifiably relied on the instruction from Brice*, by and through [Williams], to refrain from any and all substantive communication regarding the *Robinson* matter until [Williams] resolved the outstanding issues with GuideOne.

"28. *Despite the representations made by Brice* in connection with the *Robinson* matter (upon which Matiasic detrimentally relied) Brice filed [the malpractice action] against Matiasic for professional negligence alleging that Matiasic failed to comply with the California Rules of Professional Conduct and breached fiduciary duties owed to Brice. Brice alleges . . . that Matiasic represented Brice in the *Robinson* matter and,

11

therefore, owed Brice a duty to disclose and inform him of the existence of a conflict of interest created by GuideOne's reservation of rights and/or a conflict of interest that existed between himself and the other defendants in the *Robinson* matter. . . .

"29.    Matiasic is informed and believes . . . that Brice at all times relevant herein knew that Matiasic did not represent him at any point in time . . . .

"30.    *As a proximate result of the misrepresentations . . . , [the malpractice action] was filed against Matiasic.  As a proximate result of Brice's representations, Matiasic has incurred damages*, which include an increase in malpractice premiums, a downgraded rating for purposes of insurance, as well as a negative impact on Matiasic's business."  (Italics added.)

Brice is certainly correct that Matiasic's cross-complaint refers to Brice's malpractice action.  However, a cross-complaint does not undermine the right of petition simply because it responds to an already filed complaint or "may be viewed as an oppressive litigation tactic."  (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78; *id.* at pp. 77–78; accord, *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929.)  Although inartfully drafted, the above allegations make clear that Matiasic's negligent misrepresentation claim arises not from Brice's malpractice action but from Williams's 2009 statements.  Matiasic refers to the Brice's malpractice action only to demonstrate the purported falsity of Williams's statements, as well as Matiasic's discovery of same.  Matiasic also suggests that Brice's factual allegations in the malpractice action are themselves false.  However, Matiasic does not allege that he detrimentally relied on any misrepresentations within Brice's malpractice action.

Brice asserts that Matiasic's purported damages—increased insurance premiums and damage to his business—"relate *exclusively* to [Brice's] basic act of filing the malpractice action."  However, as *Alta Loma, supra,* 154 Cal.App.4th at pp. 1281, fn. 3, 1284–1287 demonstrates, damage allegations are not determinative.  (Accord, *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 ["[a] 'cause of action' must be distinguished from the remedy sought . . . [and] the SLAPP statute does not apply where

12

it is the prayer for an injunction which arises from an act in furtherance of a person's right of petition or free speech"].)

In *Alta Loma, supra,* 154 Cal.App.4th 1273, a landlord decided to remove an apartment building from the rental market, providing notice pursuant to the municipal code and the Ellis Act. One tenant responded by requesting an extension of the deadline to vacate, as permitted by statute, on the ground she was disabled. However, she failed to substantiate her disability to the landlord's satisfaction. (*Id.* at pp. 1275–1279.) Ultimately, the landlord filed an unlawful detainer action and the tenant was evicted. Thereafter, the Department of Fair Employment and Housing (DFEH) sued the landlord for disability discrimination, but not wrongful eviction. DFEH sought to recover both the tenant's emotional distress damages, as well as legal fees incurred in connection with eviction proceedings. (*Id.* at pp. 1280–1281.)

The reviewing court held that the acts alleged in DFEH's complaint were not protected under the anti-SLAPP statute. (*Alta Loma, supra,* 154 Cal.App.4th at pp. 1281, 1284–1285.) First, the court observed that the motion was not well taken to the extent it sought to strike only the damages portion of the complaint. It noted: "[D]amages are remedies, not causes of action, or claims." (*Id.* at pp. 1281–1282, fn. 3.) Next, the court assumed the landlord's "acts of filing and serving notices of its intent to remove its residential units from the rental market, its investigation and communications made necessary by the rent control removal process, and its filing and prosecuting its unlawful detainer actions against [the tenant] constituted protected petitioning or free speech activity." (*Id.* at p. 1283.) However, the gravamen of DFEH's complaint was for disability discrimination arising from the landlord's alleged failure to accommodate the tenant's disability. (*Id.* at p. 1284.) "[T]he communications [about the rental property removal process] and the actual eviction itself were not the acts attacked in DFEH's complaint. . . . The letters, e-mail and filing of unlawful detainer actions constituted DFEH's *evidence* of Alta Loma's alleged disability discrimination. In other words, DFEH might well have filed the same lawsuit had [the landlord] simply ignored [the tenant's] claim of disability . . . without any communication from it at all and simply filed

a complaint for unlawful detainer." (*Id.* at pp. 1284–1285.) The court stated: "This suit might have been 'triggered by' [the landlord's] filing, serving and processing the paperwork necessary to remove its residential units from the rental market in accordance with applicable laws. However, it is not true [the landlord] was sued because it filed these notices in the official . . . removal process, or because it communicated with [the tenant] in connection with the process, or even because it filed the unlawful detainer actions against her." (*Id.* at p. 1287.) Rather, the gravamen of the complaint was for disability discrimination, in that the landlord "fail[ed] to accept the fact of, and accommodate, [the tenant's] disability by granting her an extension of her tenancy . . . ." (*Ibid.*)

Just as in *Alta Loma,* the allegations of Matiasic's cross-complaint make clear that, although Brice's malpractice action may have "triggered" Matiasic's damages or serve as evidence to support Matiasic's cause of action, it is Williams's 2009 statements that are the challenged activities underlying Matiasic's cross-complaint.

### 2. *Williams's 2009 Statements*

Brice maintains that, even if the allegations regarding his malpractice action were incidental, the cross-complaint is nevertheless subject to section 425.16 because it arises from Williams's 2009 statements, which he characterizes as "written or oral statement[s] or writing[s] made in connection with the [Coverage Action] as well as the [*Robinson*] action." (See § 425.16, subd. (e)(2).)

Statements made in connection with an issue under consideration in ongoing civil litigation are also covered by the anti-SLAPP statute. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures, supra,* 184 Cal.App.4th at p. 1548.) However, "[n]ot all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16." (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037.) "Our analysis [under section 425.16, subdivision (e)(2),] can be broken down into three components: (a) was there an 'issue under consideration or review by a legislative, executive, or judicial body'; (b) were the [defendants'] statements made 'in connection with' this issue; and (c) did the causes of

14

action pleaded by [the plaintiff] 'aris[e] from' the [defendants'] statements?  (§ 425.16, subd[s]. (e)(2), (b)(1).)"  (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 372–373, fn. omitted.)

In November and December 2009, the *Robinson* action was pending.  Thus, a judicial body was considering, among other things, whether Brice had breached his fiduciary duty to Temple, misappropriated Temple's property, or breached his employment agreement.  However, Matiasic does not complain of any statements made by Brice or Williams that are "in connection" with such issues.  Nothing in the record before us suggests that the *Robinson* court was considering who represented Brice or his entitlement to *Cumis* counsel.

Brice points to William's declaration in support of the special motion strike, wherein Williams made the following conclusory declaration:  "In anticipation/ contemplation of the *Robinson* matter litigation and in anticipation/contemplation that a coverage action would be filed against GuideOne . . . I engaged in communications with GuideOne and Matiasic. . . . Those communications are now the subject of and form the basis of Matiasic's cross-complaint against [Brice.]"  But, her conclusory declaration does not defeat Matiasic's claim as a matter of law, so we rely instead on the cross-complaint and Matiasic's declaration and exhibits to provide the substance of Williams's statements.  (See *Neville, supra,* 160 Cal.App.4th at p. 1262.)

Brice also suggests that Williams's communications are protected activity as long as they had some connection to *Robinson*.  However, the authority is to the contrary.  Section 425.16 "does not accord anti-SLAPP protection to suits arising from any act having *any connection*, however remote, with an official proceeding.  The statements or writings in question must occur in connection with 'an issue under consideration or review' in the proceeding."  (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 866, italics added.)  "[I]t is insufficient to assert that the acts alleged were 'in connection with' an official proceeding.  There must be a connection with an issue under review in that proceeding."  (*Id.* at p. 867.)  "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) *if it relates to the substantive issues in the litigation*

15

and is directed to persons having some interest in the litigation." (*Neville, supra*, 160 Cal.App.4th at p. 1266, italics added & fn. omitted.)

This case is nothing like *Neville, supra,* 160 Cal.App.4th 1255, in which an employer fired an employee after the employee allegedly misappropriated customer lists and solicited those customers for a competing business. Several months before filing suit against the former employee, the employer's attorney sent a letter to the employer's customers, accusing the employee of breach of contract and misappropriation of trade secrets. The letters also suggested that, to avoid any potential involvement in ensuing litigation, the customers should not do business with the former employee. (*Id.* at pp. 1259–1260.) The employer eventually sued its former employee for misappropriation of trade secrets. The employee filed a cross-complaint for defamation, arising from alleged " 'false accusations, representations, statements and comments' " in the letter. (*Id.* at p. 1260.)

The employee's defamation suit arose from constitutionally protected petitioning activity, within the meaning of section 425.16, subdivision (e)(2), "because the letter directly related to the employer's claims against the employee, and the employer was seriously and in good faith contemplating litigation against the employee." (*Neville, supra,* 160 Cal.App.4th at p. 1259.) The letter related to the substantive issues in the litigation because it spoke directly to the employer's claims that the former employee had misappropriated the employer's customer lists. (*Id.* at p. 1267.)

Here, in contrast to the letter at issue in *Neville*, the letters refer to representation of the *Robinson* defendants and also note that *Robinson* had been remanded to state court. But Williams's letters do not make any mention of the substantive issues involved in the *Robinson* action. Brice's reliance on *Cabral v. Martins* (2009) 177 Cal.App.4th 471 and paragraph 28 of the cross-complaint is similarly misplaced.

In *Cabral v. Martins, supra,* 177 Cal.App.4th 471, the reviewing court broadly observed: "[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." (*Id.* at p. 480.) However,

16

the court made this statement in discussing the application of section 425.16, subdivision (e)(1) to a suit in which the defendant lawyer had been sued, in relevant part, for attempting to implement a revised will through probate proceedings and in defending other defendants in judicial proceedings. (*Cabral,* at pp. 479–480.) We do not read *Cabral*, as Brice does, as an expansion of the activity protected by section 425.16, subdivision (e)(2).

Paragraph 28 of Matiasic's cross-complaint does not unequivocally concede that Williams's statements relate to the substantive issues in the *Robinson* litigation. Thus, it does not constitute a judicial admission that Williams's statements were "in connection" with the *Robinson* litigation. (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456 [" '[a] judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case' "].)

In late 2009, Brice and Williams were also contemplating filing the Coverage Action and Williams, in her letters and at the December 8 meeting, clearly articulated Brice's position that "*Cumis* may apply" due to conflicts of interest. The December 23 letter also advised that "all of the insureds will be instituting an action against [GuideOne]." "There is no question that 'a prelitigation statement falls within clause (1) or (2) of section 425.16, subdivision (e) if the statement " 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration." ' " ' " (*Aguilar v. Goldstein, supra,* 207 Cal.App.4th at p. 1162; accord, *Neville, supra,* 160 Cal.App.4th at p. 1268.) Brice's entitlement to *Cumis* counsel would be at issue and was, in fact, an "issue under consideration" by a judicial body when the Coverage Action was ultimately filed. (§ 425.16, subd. (e)(2).)

Although Williams's statements about entitlement to *Cumis* counsel or the purported conflict of interest may be referenced in Matiasic's cross-complaint, we agree with Matiasic that his negligent misrepresentation cause of action does not arise from such statements. Matiasic does not allege that such statements were false. Rather, the gravamen of Matiasic's cross-complaint is his allegation that Williams negligently misrepresented she was advising and representing Brice. We agree with Matiasic that

17

"the November 23, 2009 and December 23, 2009 letters are referenced in the Cross-Complaint and in Matiasic's declaration not for the truth of whether Brice was entitled to *Cumis* counsel, but as evidence of the representations made by [Williams] . . . that she was representing [Brice] and advising him as to the existence of a conflict of interest." Any reference to Williams's statements regarding a conflict of interest are only incidental. Statements that are not the basis of a plaintiff's claim are irrelevant for purposes of the anti-SLAPP statute. (*Aguilar v. Goldstein, supra,* 207 Cal.App.4th at p. 1162.)

Matiasic's negligent misrepresentation cause of action undoubtedly was triggered by the *Robinson* action, the Coverage Action, and Brice's malpractice action. However, we conclude that Brice failed to meet his burden to show Matiasic's cross-complaint arose from protected activity. We need not address whether Matiasic established a probability of prevailing on his cross-complaint.

### III.   DISPOSITION

The order denying the special motion to strike Matiasic's cross-complaint is affirmed. Respondents are to recover their costs on appeal.

_____
BRUINIERS, J.

WE CONCUR:


_____
JONES, P. J.


_____
NEEDHAM, J.

18