Filed 3/30/21  Sheridan Pacific, LLC v. Pritchett CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHERIDAN PACIFIC, LLC,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>RONNIE PRITCHETT et al.,<br><br>        Defendants, Cross-complainants and Appellants. | D076609<br><br><br>(Super. Ct. No. 37-2018-0001017-CU-FR-CTL)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on March 30, 2021, be modified as follows:

In the first paragraph of the counsel listing, the name "Waddy Stephenson" is added, so that the counsel listing now reads:

Landay Roberts and John Kenneth Landay, Waddy Stephenson for Defendants, Cross-complainants and Appellants Ronnie Pritchett and Nancy Pritchett.

There is no change in the judgment.

HUFFMAN, Acting P. J.

Copies to:  All parties

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHERIDAN PACIFIC, LLC,<br><br>      Plaintiff, Cross-defendant and Respondent,<br><br>      v.<br><br>RONNIE PRITCHETT et al.,<br><br>      Defendants, Cross-complainants and Appellants. | D076609<br><br><br><br>(Super. Ct. No. 37-2018-0001017-CU-FR-CTL ) |

APPEALS from an order of the Superior Court of San Diego County, Richard S. Whitney Judge.  Affirmed.

Landay Roberts and John Kenneth Landay for Defendants, Cross-complainants and Appellants Ronnie Pritchett and Nancy Pritchett.

Law Office of Christopher T. Wright and Christopher Thomas Wright for Defendant, Cross-complainant and Appellant TripleLite, LLC.

La Quinta Law Group and Timothy L. Ewanyshyn for Plaintiff, Cross-defendant and Respondent, Sheridan Pacific, LLC.

Defendants, cross-complainants and appellants Ronnie Pritchett, Nancy Pritchett and TripleLite, LLC (TripleLite) appeal from an order

granting the Code of Civil Procedure[1] section 425.16 special motion to strike brought by plaintiff, cross-defendant and respondent Sheridan Pacific, LLC (Sheridan). By its motion, Sheridan sought to strike portions of the Pritchetts' and TripleLite's cross-complaints arising out of an agreement for Sheridan's purchase of a 45 percent membership interest in TripleLite, which appellants alleged Sheridan had rescinded. The trial court granted the motion, ruling the cross-complaints sought damages arising from protected litigation activity: that the gravamen of appellants' challenged causes of action was that Sheridan had refused to acknowledge the rescission and its actions based on litigating that position caused them damage. The court further found appellants could not establish a probability of prevailing on the merits because the litigation privilege applied.

Appellants contend none of the stricken causes of action arose from protected litigation activity. They further contend the trial court did not correctly apply the principal thrust/gravamen test, which they maintain is no longer viable, when it struck entire causes of action rather than the offending claims for relief. Appellants maintain the trial court did not need to strike various paragraphs of their cross-complaints alleging litigation activity that were assertedly "incidental" to any claim for relief and thus not subject to section 425.16. We affirm the order.

---

[1]    Undesignated statutory references are to the Code of Civil Procedure. Section 425.16 is commonly referred to as the anti-SLAPP statute, since a special motion under the statute seeks to strike a " '[s]trategic lawsuit against public participation' " or SLAPP. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2 (*Wilson*); *Balla v. Hall* (2021) 59 Cal.App.5th 652, ___.)

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts in the light most favorable to appellants, the opponents of Sheridan's special motion to strike. "We consider 'the pleadings, and supporting and opposing affidavits upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to [appellants] and evaluate [Sheridan's] evidence only to determine if it has defeated that submitted by [appellants] as a matter of law.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; see *Sweetwater Union High School Distr. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 941.)

In 2016, appellants entered into a purchase agreement to sell Sheridan a 45-percent membership interest in their company TripleLite for $300,000. As part of the purchase agreement, Sheridan appointed Gina Blaemire and Roger Blaemire as managers. Disputes arose between the parties, causing Sheridan in January 2018 to sue appellants alleging fraud and other causes of action. In its complaint, Sheridan sought damages and an order rescinding both the purchase agreement and an operating agreement. The Pritchetts through counsel notified Sheridan that they agreed to the purchase agreement's rescission and return of Sheridan's investment.

Thereafter, Sheridan filed a first amended complaint removing its prayer for rescission of the purchase agreement and alleging that appellants had breached the purchase agreement. Sheridan sought damages, an injunction prohibiting appellants from depleting TripleLite's assets and compelling TripleLite to maintain required documents, appointment of a receiver, and an accounting. In a second amended complaint, Sheridan sought to remove the Pritchetts as TripleLite's managers. Appellants demurred to the second amended complaint. The trial court sustained the

3

demurrer as to all causes of action with the exception of fraud, ruling in part that Sheridan's derivative claims failed because the parties had rescinded the purchase agreement and Sheridan was no longer a member of TripleLite.

In a third amended complaint, Sheridan added a cause of action for breach of implied contract, alleging that the court's order sustaining appellants' demurrer created an implied contract by which appellants were obligated to return Sheridan's $300,000 plus interest, and pay restitution of benefits that Sheridan conferred on them as well as consequential damages.

Appellants filed cross-complaints against Sheridan for fraud, breach of fiduciary duty, conversion, and "enforcement of rescission."[2] In part, they alleged that by serving its first complaint, Sheridan effected the rescission of the purchase agreement, extinguishing its interest in TripleLite and leaving Ronnie and Nancy Pritchett as TripleLite's sole members. They alleged that after the Pritchetts notified Sheridan they would not contest the rescission, Sheridan refused to acknowledge its rescission of the purchase agreement but instead "improperly continued to assert . . . derivative causes of action on behalf of TripleLite as well as direct causes of action that relied on the rescinded Purchase Agreement," requiring the parties to stipulate to appointment of a receiver to assist in TripleLite's management. Additionally, appellants alleged that even though Sheridan had rescinded the purchase

---

[2] The Pritchetts cross-complained for "enforcement of rescission" (first cause of action), fraud (second cause of action), and conversion (third cause of action). TripleLite's cross-complaint omitted the conversion claim and replaced it with a third cause of action against Sheridan for breach of fiduciary duty. TripleLite alleged that the Blaemires owed it a fiduciary duty but breached it by various actions, including usurping TripleLite opportunities, engaging in interested transactions that they did not fully disclose, refusing to authorize TripleLite's debt payments or account for TripleLite products entrusted to them, and interfering with the Pritchetts' co-equal right to manage TripleLite.

4

agreement, it filed an ex parte application seeking a temporary restraining order on TripleLite's behalf to enjoin the Pritchetts from taking various actions regarding TripleLite's patents, and leave of court to file a second amended complaint adding another derivative cause of action to remove the Pritchetts as managers. Appellants alleged that as a result of Sheridan's refusal to acknowledge the rescission, they suffered damages including receiver costs as well as legal and accounting fees. The Pritchetts alleged in support of their conversion claim that as a result of Sheridan's rescission of the purchase agreement, they were TripleLite's sole members and managers, but Sheridan and the Blaemires refused to acknowledge the rescission and in so doing, they "intentionally and substantially interfered with [the] Pritchett[s'] right to possess TripleLite." The cross-complaints more specifically allege misconduct by the Blaemires with respect to various business decisions and dealings with vendors or other companies.

In separate motions brought under the anti-SLAPP statute, Sheridan sought to strike the "enforcement of rescission" and the Pritchetts' conversion causes of action. It argued those causes of action arose directly from acts in furtherance of its right of free speech or right of petition under section 425.16, subdivision (e), specifically its pursuit of the present litigation. Sheridan argued the "claims are based entirely on the [cross-complainants'] allegations that [Sheridan] rescinded the Purchase Agreement when it filed its complaint on January 9, 2018, but that [Sheridan] failed to recognize that the agreement had been rescinded and continued to litigate the issue." According to Sheridan, appellants "would not have a claim for enforcement of rescission or conversion if [Sheridan] had simply accepted that the Purchase Agreement was rescinded when [Sheridan] filed its complaint. Instead, [appellants] allege that they were damaged by [Sheridan's] continued

5

prosecution of its derivative claims, which included obtaining an injunction and the parties' subsequent stipulation to the appointment of a receiver for TripleLite." Sheridan argued that because the gravamen of the Pritchetts' causes of action was based "primarily, if not entirely, on protected activity," it had met its threshold prima facie showing under the anti-SLAPP statute. Sheridan further argued appellants could not demonstrate a probability of prevailing on the challenged causes of action because the litigation privilege precluded Sheridan's liability.

In opposition, defendants argued Sheridan mischaracterized their causes of action "by conflating Sheridan['s] prosecution of this litigation with [its] conduct . . . before and after the rescission of the Purchase Agreement, conduct that resulted in damages to [TripleLite]." Appellants argued they sought equitable relief to enforce Sheridan's rescission premised on harm caused by Sheridan's pre-rescission management of TripleLite, including via its agents, or its post-rescission interference in TripleLite's management. Appellants pointed to allegations in the second amended complaint that the Blaemires necessitated the appointment of a receiver to assist in managing TripleLite even though they were no longer managers; refused to address TripleLite's tax issues, exposing appellants to additional costs and penalties; mandated TripleLite's entry into a marketing contract under a conflict of interest resulting in TripleLite paying significantly more for those services; and refused to allow TripleLite to publish a website to advertise and sell its products. Appellants pointed to allegations that Gina Blaemire incorrectly informed another company that the Pritchetts had been removed as managers, resulting in a loss of sales. They finally pointed to an allegation that Sheridan sought a preliminary injunction on TripleLite's behalf without

6

standing and despite TripleLite's objections.[3] The Pritchetts argued their claim for conversion was not based on Sheridan's prosecution of the action but on Sheridan's and the Blaemires' conduct after the Purchase Agreement was rescinded. Finally, appellants argued that their causes of action were compulsory counter claims brought in a compulsory cross-complaint which "rarely, if ever, qualifies as a SLAPP suit arising from petition activity."[4]

---

[3] As to this allegation, defendants admitted in a footnote it was "arguably . . . related to Sheridan['s] prosecution of this litigation." They argued that in view of the court's prior ruling that Sheridan did not have standing to assert causes of action on TripleLite's behalf, there was still a reasonable probability Sheridan did not have standing to seek a preliminary injunction on its behalf, and thus, the Pritchetts met their burden to show a reasonable probability they would prevail on that specific claim for damages.

[4] Appellants repeat this claim in a footnote in their opening brief. A cross-complaint, however, may be subject to an anti-SLAPP motion. (§ 425.16, subd. (h).) While a compulsory cross-complaint is not a SLAPP merely because it is filed in response to a complaint, such a suit may nevertheless be dismissed under the statute if it arises out of the litigation process itself. (See *Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 91, 97 [cross-complaint arose from litigation or decisions regarding funding or refusing to fund litigation, activity protected by the anti-SLAPP statute]; *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1373-1374.) Appellants' cited authority, *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628 (disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5) is not to the contrary. There, the Court of Appeal discussed the issue of compulsory cross-complaints in response to the church's argument that a broad application of section 425.16 to all litigation activity would subject all cross-complaints to a special motion to strike. The court rejected such a proposition, pointing out that "[o]nly those cross-complaints alleging a cause of action *arising* from the plaintiff's act of filing the complaint against the defendant and the subsequent litigation would potentially qualify as a SLAPP action." (*Church of Scientology*, 42 Cal.App.4th at p. 651.)

The trial court granted Sheridan's motions. It ruled: "The thrust of [the Pritchetts'] first cause of action for enforcement of rescission and their third cause of action for conversion in their cross-complaint is that [Sheridan] wrongfully proceeded as if the rescission had not occurred, a clear subject of dispute in this litigation, and that [the Pritchetts] suffered damages as a result. The Pritchetts explicitly allege 'Cross-complainants suffered damages, including receiver costs, legal fees, accounting fees due to Sheridan['s] wrongful assertion that the Purchase Agreement had not been rescinded.' . . . Plaintiff['s] and their agent's refusal to acknowledge the rescission and their actions to 'intentionally and substantially interfere[ ] with [the Pritchetts'] right to possess TripleLite' directly arise from their position in litigation that the Agreements were not rescinded. . . . Plaintiff's actions in litigating its position that the Agreements were not rescinded are protected litigation activity." The court further ruled: "While the Pritchetts include allegations of actions prior to rescission, they do not demonstrate how such actions caused damages. The gravamen of the first cause of action for enforcement of rescission and the third cause of action for conversion is that [Sheridan] refused to acknowledge the rescission and that [Sheridan's] continued actions based on that position caused them damage. Those purported damages arise from protected litigation activity." The trial court found the litigation privilege applied, and thus the Pritchetts could not show a probability of prevailing on their claims. The trial court reached the same conclusion on TripleLite's enforcement of rescission cause of action.

Appellants filed these appeals from the trial court's order.

8

## DISCUSSION

### I. *Legal Principles and Standard of Review*

"California's anti-SLAPP statute 'provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.' [Citation.] 'Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by [the statute]. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Murray v. Tran* (2020) 55 Cal.App.5th 10, 25, quoting *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) The plaintiff must establish its claims have " 'at least "minimal merit." ' " (*Wilson, supra,* 7 Cal.5th at p. 884; *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 436.) " 'The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.' . . . If the plaintiff does not make that showing, a court will strike the claim." (*RGC Gaslamp*, at p. 436.)

"We apply a de novo review to a court's rulings on whether the parties met their respective burdens." (*Murray v. Tran, supra,* 55 Cal.App.5th at p. 25, citing *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Wilson, supra,* 7 Cal.5th at p. 884.)

### II. *Protected Activity Prong*

As a threshold matter, we observe that Sheridan's motion has not sought to strike appellants' entire cross-complaint; the motion is limited to, and seeks to strike, two causes of action: Appellants' first cause of action for "enforcement of rescission" and the Pritchetts' third cause of action for

9

conversion. Our analysis does not reach appellants' fraud causes of action or TripleLite's breach of fiduciary duty cause of action.

Sheridan's "first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Wilson*, *supra*, 7 Cal.5th at p. 884.) But "[a]ssertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra*, 1 Cal.5th 394; see also *Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 587 ["A claim based on protected activity is incidental or collateral if it 'merely provide[s] context, without supporting a claim for recovery' "].)

The court in *Wilson* explained this threshold burden in more detail. For the first step of the anti-SLAPP inquiry, Sheridan "must make two related showings." (*Wilson*, *supra*, 7 Cal.5th at p. 887.) "Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection. (See § 425.16, subd. (e).) And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Wilson*, at p.

10

887; see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063 (*Park*).) "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected [citations], not whether it has shown its acts are ultimately lawful." (*Wilson*, at p. 888.) "If the acts alleged in support of the plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply." (*Id.* at p. 887.)[5]

As relevant here, the anti-SLAPP statute protects "any written or oral statement or writing made before a legislative, executive, or judicial proceeding" (§ 425.16, subd. (e)(1)) or "in connection with an issue under consideration or review" in such proceedings (§ 425.16, subd. (e)(2)). " ' "The filing of lawsuits is an aspect of the First Amendment right of petition" [citation], and thus is a protected activity under the anti-SLAPP statute.' " (*Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 27; *Gaynor v. Bulen, supra,* 19 Cal.App.5th at p. 880

---

[5] This court has explained: "In recently clarifying these 'arising from' principles, the California Supreme Court emphasized the need for courts to determine whether the protected activity was the alleged injury-producing act that formed the basis for the claim. [Citation.] The high court explained: ' "The only means specified in section 425.16 by which a moving defendant can satisfy the ['arising from'] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . ." ' [Citation.] The *Park* court thus instructed that 'in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] In so doing, the courts should be 'attuned to and . . . respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity *or provide evidentiary support for the claim.*' " (*Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 877-878.)

11

[filing of petitions, motions and briefs in court are protected petitioning activities].) Any act in furtherance of the right to petition is subject to the statute, and any act " 'includes communicative conduct such as the filing, funding, and prosecution of a civil action.' " (*Takhar*, at p. 28, quoting *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "Statements made in preparation for litigation or in anticipation of bringing an action fall within these categories." (*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.*, *supra*, 56 Cal.App.5th at p. 437.) "If a statement falls into one of these categories, a defendant does not separately need to show that his or her statement was made in connection with a 'public issue.' " (*Ibid.*)

This court decides de novo whether appellants' claims arise from activity protected by the statute. (*Wilson*, *supra*, 7 Cal.5th at p. 884.) If the trial court's decision is correct on any theory, we will affirm regardless of the correctness of the grounds on which it reached its conclusion. (*Gaynor v. Bulen*, *supra*, 19 Cal.App.5th at p. 876.)

A. *Enforcement of Rescission Causes of Action*

Appellants contend their causes of action for enforcement of rescission are brought under Civil Code sections 1691 and 1692. A party to a contract effects a rescission under Civil Code section 1691 by giving notice of rescission and restoring, or offering to restore, everything of value received under the contract. (See Civ. Code, § 1691; *Southern Ins. Co. v. Workers' Comp. Appeals Bd.* (2017) 11 Cal.App.5th 961, 971.) The service of a pleading in an action seeking relief based on rescission is deemed to be such a notice or offer, or both. (Civ. Code, § 1691, subd. (b).) When there has been a full or partial rescission, any party to the contract may seek relief based on the rescission by "bringing an action to recover any money or thing owing to him by any other party to the contract *as a consequence of such rescission*[.]" (Civ.

12

Code, § 1692, italics added.) "A claim for damages is not inconsistent with a claim for relief based on rescission. The aggrieved party shall be awarded complete relief including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery. [¶] If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." (*Ibid.*)

Appellants' causes of action for enforcement of rescission seek relief not for Sheridan's rescission of the purchase agreement, which Sheridan effected by filing its original complaint, but Sheridan's later alleged *repudiation* of its rescission. Assuming such a claim is nevertheless one for "money . . . owing to [the party] by any other party to the contract as a consequence of such rescission" (Civ. Code, § 1692), Sheridan demonstrated that the injury-producing conduct—the activity asserted as grounds for relief—was Sheridan's litigation activities. That is, it showed appellants sought relief stemming from Sheridan taking legal positions contrary to its rescission when it (a) filed amended pleadings containing legal positions relying on the purchase agreement as if the rescission had not occurred, necessitating appointment of a receiver; (b) filed an ex parte application for a temporary restraining order; and (c) unsuccessfully sought a writ of attachment against appellants. Appellants allege they sought to recover receiver costs, legal fees and accounting fees as damages "due to Sheridan['s] . . . wrongful assertion that the Purchase Agreement had not been rescinded." The allegations of litigation conduct—at least in part—give rise to the receiver costs and legal fees; we cannot say they are incidental or collateral to, or merely provide

13

evidence of, the causes of action. (*Baral*, *supra*, 1 Cal.5th at p. 394; compare *Gaynor v. Bulen*, *supra*, 19 Cal.App.5th at p. 880 [filing of probate court petitions provided evidence of breaches of fiduciary duty, but were unnecessary to establish the breach of fiduciary duty claim].)

We are not persuaded by appellants' argument that their enforcement of rescission causes of action arise from non-protected conduct. They maintain the gravamen of their claim is Sheridan's mismanagement of TripleLite and "out of court conduct resulting from its contention that the Purchase Agreement had not been rescinded . . . ." Specifically, they argue the basis for their claim is Sheridan's unilateral rescission that occurred "when it complied with the Notice and Offer Requirements for Rescission"; the Blaemires' conduct in continuing to serve as TripleLite managers despite being removed by the Pritchetts; and the Blaemires' pre-rescission and post-rescission conduct that harmed TripleLite. Appellants suggest their references to Sheridan's litigation are incidental to the gravamen of their claim, similar to the references to protected activity in *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265 and *Park*, *supra*, 2 Cal.5th 1057. According to appellants, the trial court failed to correctly apply the principal thrust/gravamen test, which they say has been called into question in any event and did not permit the court to strike the cause of action in its entirety.

This court has made clear that in assessing the first "arising from" prong of the anti-SLAPP statute, "a court must continue to analyze whether the allegations of protected activity within each 'claim' are incidental or whether the principal thrust of the claim triggers anti-SLAPP protection." (*Gaynor v. Bulen*, *supra*, 19 Cal.App.5th at p. 886.) The moving party's burden is to establish a nexus between protected acts and the core basis for the alleged injury, focusing on the elements of the claim and what conduct

14

supplies those elements. (*Wilson*, *supra*, 7 Cal.5th at p. 884; *Gaynor*, at p. 886, citing *Park*, *supra*, 2 Cal.5th at pp. 1062-1073.) We therefore reject appellants' argument that the principal thrust/gravamen test is inapplicable to their claim. (Accord, *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 111-113 [*Baral* did not address or disapprove the principal thrust or gravamen analysis]; *Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 595 , fn. 7 [rejecting argument that *Baral* disavowed the gravamen test and pointing out it disapproved use of the "primary right" theory of liability to determine whether a cause of action is based on protected activity].)

Under this analysis, appellants' allegations concerning Sheridan's notice of rescission and the Blaemires' alleged pre-rescission misconduct do not supply the elements or form the basis for the relief they seek in enforcing Sheridan's rescission of the purchase agreement. As we have stated, appellants are not complaining of Sheridan's notice of rescission (effected by its original January 2018 complaint, as indicated above), their claims stem from Sheridan's later repudiation of the rescission and alleged damages caused by its bringing continued derivative litigation, requesting a restraining order, and seeking an unsuccessful writ of attachment based on its legal positions relying on the continued validity of the purchase agreement.

Nor can we say the Blaemires' "assertive conduct of continuing to participate in the management of TripleLite" is the sole basis for the enforcement of rescission claim. Appellants presumably argue their damages stem from the Blaemires' conduct in continuing to participate and interfere in TripleLite's business activities *after* Sheridan rescinded the purchase agreement. Appellants argue that their damages constitute TripleLite's

15

payment of legal fees to Ignite Marketing (Ignite) and Diversified Accounting to resolve disputes with those vendors, as well as duplicative accounting fees due to the parties' inability to agree on an accounting firm. They point to assertions made in declarations submitted not in connection with the anti-SLAPP motion, but in support of appellants' opposition to Sheridan's application for a right to attach order and writ of attachment. There is no indication on this record that these declarations were before or considered by the trial court on Sheridan's anti-SLAPP motion. Elsewhere in their opening brief, appellants point to allegations of the Blaemires' conduct with respect to other companies (Reed Marketing, Bulb Queen), and TripleLite's advertising website.

As to Ignite, the cross-complaints allege that the Blaemires' misconduct took place *before* Sheridan rescinded the purchase agreement in January 2018: appellants allege that *prior to the purchase agreement's execution*, the Blaemires were informed of TripleLite's debt to Ignite, and Gina Blaemire agreed to negotiate a payment plan for amounts owed to it. They allege that "*in 2017*, [the Blaemires] refused to authorize payment on the agreed upon payment plan with Ignite . . . , resulting in a complaint being filed against TripleLite on or about August 2, 2018." (Italics added.) A claim for enforcement of rescission seeks damages "as a consequence of the rescission" (Civ. Code, § 1692), and the Ignite damages or legal fees arise from the Blaemires' conduct occurring *before* the purchase agreement was rescinded. That conduct, even if wrongful, does not supply the elements or form the basis for liability on appellants' claim that they suffered damage *as a result of Sheridan's rescission*. (*Park, supra*, 2 Cal.5th at p. 1063.)

We reach the same conclusion regarding appellants' allegations about TripleLite's advertising website. They allege that in *January 2017*, Gina

16

Blaemire directed Reed Marketing to shut down TripleLite's website and six months later decided TripleLite did not have the financial resources to develop a new website, resulting in TripleLite not having an advertising website for two years. Gina Blaemire's assertedly wrongful conduct occurred before the purchase agreement was rescinded, and does not provide the basis for relief for the enforcement of rescission claim.

As for the accounting matters, the cross-complaints allege that in 2016, TripleLite received a notice of suspension by the California Franchise Tax Board for overdue taxes, and in November 2016, Gina Blaemire and others worked to resolve the issue. Appellants allege the overdue returns were "all but completed by May 3, 2017," and "[a]t that time," TripleLite's corporate status was revived. The cross-complaint continues: "However, Diversified Accounting had done all the work for TripleLite's tax returns and was demanding payment for such work before providing the taxes for filing" and the Blaemires "refused to authorize TripleLite to pay Diversified Accounting for the work it had performed, including the work it had performed on the amended 2014 as well as the 2015 and 2016 tax returns." Appellants allege that "[a]s a result, no other state or federal income tax returns were filed by TripleLite until after [the Blaemires] resigned as managers of TripleLite." They allege that once the receiver was appointed the Blaemires again refused to pay for the tax work and demanded TripleLite hire a new accounting firm. Appellants allege that the Blaemires' refusal to address the tax issues exposed them to additional costs and penalties, including money paid to a new accounting firm, attorney fees incurred by Diversified Accounting in its collection attempts, and penalties and interest for the delayed filing of federal tax returns. Appellants' damages stem from the Blaemires withholding of payment authorization to Diversified Accounting after TripleLite's tax

17

returns were completed in 2017. The cross-complaint does not allege that this occurred *after* the purchase agreement was rescinded. We cannot say these damages were sustained as a result of Sheridan's rescission.

As to Reed Marketing, appellants allege without providing any timeframe that the Blaemires insisted over the Pritchetts' objection that TripleLite use Reed Marketing for packaging and marketing service, while misrepresenting the nature of the company and the Blaemires' relationship to its owner, who is Roger Blaemire's daughter and Gina Blaemire's sister. They allege that Reed Marketing provided substandard packing, which they had to replace at TripleLite's expense after the Blaemires' resignation. In view of these unspecific descriptions, we cannot agree the Reed Marketing-related conduct underlies any element of the enforcement of rescission claim. As to Bulb Queen, appellants allege that at some unspecified point before August 7, 2018, Gina Blaemire falsely informed its president that the Pritchetts were being removed as TripleLite managers and that Bulb Queen should no longer have any contact with them. They allege that because Bulb Queen dealt with Gina Blaemire (who failed to respond) and not Nancy Pritchett, TripleLite suffered a loss in sales.[6] Again these allegations are too vague and nondescript to permit a conclusion that appellants' claim involves post-rescission misconduct giving rise to damages *as a consequence of Sheridan's rescission*.

We may look beyond the cross-complaints' nonspecific allegations and consider evidentiary submissions to find clarity. (Accord, *Wittenberg v.*

---

[6] Even if we were to assume appellants' allegations as to the accounting matter, Reed Marketing, and Bulb Queen referenced unprotected conduct that formed at least part of the basis of their claim for enforcement of rescission damages, under the proper analysis, we disregard those allegations and proceed to the second step. (*Baral*, *supra*, 1 Cal.5th at p. 396.)

*Bornstein* (2020) 50 Cal.App.5th 303, 315; in part citing *Wilson*, *supra*, 7 Cal.5th at p. 887 [parties' evidentiary submissions may be considered on the first step of the anti-SLAPP analysis].) However, as we explain below, appellants' evidence consisted entirely of a request for judicial notice of pleadings and declarations, inadmissible evidence that does not shed further light on the misconduct underlying this claim.

Because we have determined that appellants seek relief based on Sheridan's protected litigation activities, we proceed to the second step of the anti-SLAPP analysis, to determine whether appellants made a showing that would be sufficient to sustain a favorable judgment on this claim.

B. *The Pritchetts' Conversion Claim*

Appellants contend the Pritchetts' cause of action for conversion does not rely on protected activity, but arises instead from Sheridan's interference with the Pritchetts' right to possess and control TripleLite "by participation in the management of TripleLite[.]" Appellants do not specify in their brief what management acts Sheridan engaged in to support this claim.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. . . . [I]t is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543-544; accord, *Avidor v. Sutter's Place, Inc.* (2013) 212 Cal.App.4th 1439, 1454; *AmerUS Life Ins. Co. v. Bank of America, N.A.* (2006) 143 Cal.App.4th 631, 642, fn. 4.) In determining whether property is subject to a conversion claim, courts recognize that " '[p]roperty is a broad concept that includes

19

"every intangible benefit and prerogative susceptible of possession or disposition." ' " (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 211.)

Appellants allege in support of their conversion claim that Sheridan rescinded the purchase agreement when it served its complaint; as a result the Pritchetts were Sheridan's sole members and managers; Sheridan and the Blaemires refused to acknowledge the rescission and thereby interfered with the Pritchetts' right to possess TripleLite. As with appellants' first enforcement of rescission cause of action, we have combed through the allegations of the cross-complaints for identifiable *post-rescission* misconduct by the Blaemires that was alleged to be injury-producing, and find none.

We agree with Sheridan that—as with the enforcement of rescission claim—the supporting allegations of the cross-complaint show that protected activity is integral to this claim, that is, the damages arise from Sheridan's legal positions taken in pleadings contrary to its rescission of the purchase agreement. Even if we assume that it is *also* based on unprotected activities (the Blaemires' post-rescission conduct in continuing to participate and interfere in TripleLite's business activities), we likewise will reach the second prong, to ask whether appellants demonstrated a prima facie case that would enable them to prevail on this claim. (*Baral, supra*, 1 Cal.5th at pp. 384-385.)

### III. *Probability of Prevailing Prong*

On the second prong of the anti-SLAPP analysis, appellants " 'must demonstrate that [the challenged claims in their cross-complaint are] both legally sufficient and supported by a sufficient prima facie showing of facts *to sustain a favorable judgment* if the evidence [they] submitted . . . is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, italics added.) The motion should be denied only if appellants can

substantiate the elements of their enforcement of rescission and conversion causes of action with evidence that, if believed, would justify a favorable verdict. (*Id.* at pp. 821, 824.)

The second step burden of establishing a probability of prevailing is not high. (*Issa v. Applegate* (2019) 31 Cal.App.5th 689, 702.) However, a party seeking to demonstrate the merits of the claim " 'may not rely solely on its complaint [or cross-complaint], even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Monster Energy Co. v. Schechter, supra,* 7 Cal.5th at p. 788.) " 'An assessment of the probability of prevailing on the claim looks to *trial,* and the evidence that will be presented at that time.' " (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236.) The question is "whether there is admissible evidence showing facts that would, if proved at trial, support a judgment in its favor on those claims." (*Id.* at p. 1239.) An anti-SLAPP motion must be granted if " 'the court concludes that the allegations made or the evidence adduced in support of the claim, even if credited, are insufficient as a matter of law to support a judgment[.]' " (*Id.* at p. 1238.)

As Sheridan points out, appellants' evidence in opposition to its motion consisted solely of a request for judicial notice of court records. The request attached Sheridan's original and amended complaints, the Pritchetts' ex parte application for appointment of a receiver, declarations of Ron Pritchett and his attorney John Landay filed in support of that ex parte application, Sheridan's ex parte application for an order to show cause for a preliminary injunction and temporary restraining order, notices of demurrers filed by the Pritchetts, and the court's minute order ruling on the Pritchetts' demurrer. Though the existence of pleadings or court documents may be the proper

21

subject for judicial notice, we may not take notice of the truth of any factual assertions contained in them. (*Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, ___ ; *Lin Joon Oh v. Teachers Insurance and Annuity Association of America* (2020) 53 Cal.App.5th 71, 81 [court may take judicial notice of court records but the truth of matters asserted in such documents is not subject to judicial notice]; *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1057 [existence of declaration, but not facts asserted therein, may be judicially noticed].)

In view of these settled principles, we must conclude appellants did not meet their burden on the second step of the anti-SLAPP analysis to demonstrate their claims " '*can be substantiated by competent evidence . . .*' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 946.) We cannot accept the truth of the declarations appended to appellants' request for judicial notice; it is not evidence capable of being admitted at trial. (*Sweetwater Union*, at p. 947.) Given the total absence of admissible evidence in opposition to the motion (*Monster Energy Co. v. Schechter*, *supra*, 7 Cal.5th at p. 788), we conclude the trial court did not err by striking the enforcement of rescission and conversion causes of action.

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.